838 So.2d 298 (2002)
Anthony ROBERSON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-00874-COA.
Court of Appeals of Mississippi.
September 3, 2002.
Rehearing Denied November 12, 2002.
Certiorari Denied February 13, 2003.
*299 Johnnie E. Walls, Jr., Greenville, Steven W. Pittman, attorneys for appellant.
Office of the Attorney General, By: W. Glenn Watts, attorney for appellee.
Before KING, P.J., LEE, and IRVING, JJ.
KING, P.J., for the court.
¶ 1. Anthony Roberson was convicted of manslaughter in the Circuit Court of Quitman County and sentenced to serve a term of twenty years in the custody of the Mississippi Department of Corrections with four years suspended. Aggrieved by his conviction and sentence, Roberson has appealed and raised the following issues which we quote verbatim:

*300 I. Did the trial court err by overruling the defendant's objection to the testimony of Officer Sims, recounting an oral statement given to him by the defendant in response to questioning, on the ground that there was no evidence of a valid waiver of rights by the defendant?
II. Did the trial court err by overruling the defendant's objection to the testimony of Teresa Ruth, recounting an oral statement given to her by the defendant in response to questioning, on the ground that there was no evidence of a valid waiver of rights by the defendant?
III. Did the trial court err by denying the defense requested jury instruction D-8, and by granting the prosecution requested jury instruction number S-3?
IV. Did the trial court err by instructing the jury in accordance with both the defense requested instruction number D-2 and with prosecution requested jury instruction number S-2?
V. Did the trial court err by overruling the defendant's motion for directed verdict made at the close of all the proof?

FACTS
¶ 2. On September 4, 2000, Charles Sims, Chief of Police for the City of Marks, Mississippi (also an officer with the Town of Falcon Police Department), responded to a call from Ms. Shirley Cotton's trailer home in Falcon, Mississippi regarding a shooting which occurred at approximately 10:39 p.m. Upon arriving at the trailer, Officer Sims found "a body lying on the west side of the road next to a ditch." As the officer shone his flashlight on the body, he recognized it as that of Tommy Cotton, Ms. Cotton's ex-husband. He then contacted the Quitman County Sheriff's Department for an ambulance. Officer Sims saw Anthony Roberson (Ms. Cotton's son) and his wife, Vivian Roberson, on the front porch of the trailer.
¶ 3. Prior to asking Roberson about the incident, Officer Sims orally advised Roberson of his Miranda rights. Officer Sims testified that Roberson then told him that "he and his wife was [sic] in bed, and she woke and told him that someone was in there. She heard some noises in the house. he got uphe got up and got his gun and started down the hall. He saw someone run out the door. He proceeded behind them and he fired one shot in the air, and he said the second shot he leveled off and shot the person."
¶ 4. According to Roberson's wife, she put the gun under the steps when a crowd of people gathered. At Officer Sims' request, Roberson retrieved and gave the gun to the officer. Officer Sims indicated that he collected two shell casings. "One was located on the porch of Shirley Roberson's trailer. The other one on the ground just east of the steps."
¶ 5. After gathering information at the scene, Officer Sims asked Roberson, his wife, and his mother to come to the town hall and put their statements in writing. While at the town hall, Roberson executed a written waiver of rights form, which was witnessed by Officer Sims. Roberson then gave a handwritten statement to the officer.
¶ 6. The county coroner, Teresa Ruth, testified that upon examining the body, she noticed a bullet hole located in the center of the deceased's back. As part of her investigation, she attempted to determine if there was a trail of blood between the trailer and the spot where the body was located. She saw no such blood trail. She stated that the deceased had a white bank envelope which contained a twenty dollar bill clutched in his hand. Ruth asked Roberson *301 to tell her what had happened. Ruth testified that while standing on the porch of the trailer, Roberson stated that "he and Vanessa [sic] were waked [sic] up when they heard somebody coming into the trailer. And they got up and the intruder ran. He went to get the gun out of the cabinet.... He went on the porch with the gun and fired two shots."
¶ 7. Dr. Steven Hayne performed an autopsy on the body of Tommy Cotton. He testified that "there was an entrance gunshot wound being located over the mid-part of the back 17½ inches below the top of the head, one inch to the right or the mid-part of the back." Dr. Hayne determined that the cause of death was a "gunshot wound to the back, distant or near contact and perforated."
¶ 8. At trial on May 1, 2001, Anthony Roberson was found guilty of manslaughter. He was sentenced to serve a term of twenty years in the custody of the Mississippi Department of Corrections with four years suspended.
¶ 9. On May 31, 2001, Roberson filed a motion for judgment notwithstanding the verdict or alternatively a new trial. This motion was denied.
ISSUES AND ANALYSIS
I.
Did the trial court err by overruling the defendant's objection to the testimony of Officer Sims, recounting an oral statement given to him by the defendant in response to questioning, on the ground that there was no evidence of a valid waiver of rights by the defendant?
¶ 10. Roberson contends that the trial court erred by overruling his objection to Officer Sims' testimony. Roberson claims Officer Sims recounted an oral statement given to him without evidence having been presented of a valid waiver of his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Roberson maintains that the State did not provide evidence of a waiver of his rights during the initial talk with Officer Sims at the scene.
¶ 11. When the circuit court expressly or implicitly resolves the issue of admissibility of a confession against a defendant, this Court's scope of review is confined to established limits. Greenlee v. State, 725 So.2d 816(¶ 21) (Miss.1998). This Court has held that, "[w]here the trial court has overruled a motion to suppress the confession of a defendant, this Court will reverse the trial court's decision only if the trial court's ruling `is manifestly in error or contrary to the overwhelming weight of the evidence.'" Id. (quoting McGowan v. State, 706 So.2d 231, 235 (Miss.1997)).
¶ 12. Officer Sims testified that he gave Roberson an oral Miranda warning prior to talking with him. Officer Sims asked Roberson if he understood his rights to which the reply was affirmative. Officer Sims testified that after the Miranda rights were given to Roberson, Roberson told him what happened.
¶ 13. The testimony during the suppression hearing reveals the following:
Q. Did he make a statement to you at the scene?
A. Yes, sir, he did.
Q. Prior to making that statement to you, what, if anything, did you say to him or do in regards to him speaking to you?
A. I gave him his Miranda [r]ights verbally on the scene.
Q. All right. When you refer to Miranda [r]ights, is that the right to remain *302 silent, the right to an attorney, et cetera?
A. Yes, sir.
Q. Okay. And did he appear to understand those rights?
A. Yes, sir. I asked him did he understand them.
. . . .
A. And he went on to tell me that he he and his wife was in bed, and she woke him and told him that someone was in there. She heard some noises in the house. he got uphe got up and someone run out the door. He proceeded behind them and he fired one shot in the air, and he said the second shot he leveled off and shot the person.
¶ 14. Officer Sims testified that at city hall he gave Roberson his Miranda rights a second time. At that time, Roberson signed a Miranda waiver of rights form. The State did provide evidence through the officer's testimony, which was uncontradicted, that Roberson was advised of his Miranda rights. Consequently, if Roberson's attorney doubted whether the officer knew the Miranda warnings, he should have developed this line of questioning on cross-examination. Dees v. State, 758 So.2d 492(¶ 7) (Miss.Ct.App.2000).
¶ 15. The following testimony reveals Roberson's view regarding the Miranda warnings:
BY THE COURT: Mr. Walls, what is the objection if he gave him the Miranda rights to the statement, both written and oral?
BY MR. WALLS: Your Honor, my client will testify that he told him that he had to sign it. He said he didn't want to talk right then because he was upset and he presented it to him and said you had to sign this and he signed it.
¶ 16. The mere fact that the Miranda warnings are given orally does not render them insufficient. The Mississippi Supreme Court has said on this matter:
The appellant cites no authority, nor are we aware of any which requires that a waiver of an accused's constitutional privileges against self-incrimination, right to counsel, etc. must be in writing and signed by the accused before inculpatory statements made by him and otherwise freely and voluntarily given are admissible in evidence. Such a statement is admissible provided the accused has been afforded the protection of the Miranda warning and he thereafter knowingly and intelligently waives his rights and freely and voluntarily makes the statement.
Davis v. State, 320 So.2d 789, 790 (Miss. 1975).
The Mississippi Court of Appeals recently reiterated the adequacy of orally administering Miranda warnings in stating "oral Miranda warnings and waivers are effective if proven to the satisfaction of the trier of fact." The detailed findings of fact and conclusions of law provided by the trial court show that the trier of fact in this case was satisfied with the effectiveness of the oral Miranda warnings.
Taylor v. State, 789 So.2d 787 (¶ 26) (Miss. 2001) (citations omitted).
¶ 17. Roberson has not established that the trial court committed manifest error in allowing the confession made to Officer Sims. Therefore, we find no error on this issue.
II.
Did the trial court err by overruling the defendant's objection to the testimony of Teresa Ruth, recounting an oral statement given to her by the *303 defendant in response to questioning, on the ground that there was no evidence of a valid waiver of rights by the defendant?
¶ 18. Roberson contends that the trial court erred by allowing the testimony of the county coroner, Teresa Ruth, who recounted an oral statement given to her by Roberson. As Roberson was standing on the porch, she identified herself as the coroner and asked that he tell her what happened. Ms. Ruth testified:
A. I just asked him to tell me what had happened. And he told me that he and Vanessa [sic] were waked up when they heard somebody coming into the trailer. And they got up and the intruder ran. He went to get the gun out of the cabinet.
. . . .
A. Anthony went to get the gun. And the intruder had run out. He went out on the porch with the gun and fired two shots.
Q. Okay. What did he indicate to you that the person that he was shooting at was doing?
A. He indicated that he ran out of the trailer.
. . . .
A. He stated he got his gun out of the cabinet, went on the porch and fired two shots at the person running.
Roberson objected to the coroner's testimony, because "she's an arm of the State" and never advised him of his rights.
¶ 19. When a defendant has once been advised of his Miranda rights, other officers who subsequently discuss that charge with him are not required to advise him of his rights again. Taylor v. State, 789 So.2d 787(¶ 27) (Miss.2001). The evidence in the record indicates that Roberson had been given his Miranda rights verbally. We find that this issue is moot.
III.
Did the trial court err by denying the defense requested jury instruction D-8, and by granting the prosecution requested jury instruction number S-3?
¶ 20. Roberson contends that the trial court erred by denying his jury instruction D-8[1] and by granting the State's jury instruction S-3.[2] He asserts that he is entitled to a jury instruction "couched in language" from his perspective which informs the jury that "if it finds the prosecution *304 has failed to negate self-defense beyond a reasonable doubt, then it is the duty of the jury to acquit the defendant."
¶ 21. The standard of review regarding challenges to jury instructions is set forth as follows:
Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case, however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.
Even though based on meager evidence and highly unlikely, a defendant is entitled to have every legal defense he asserts to be submitted as a factual issue for determination by the jury under proper instruction of the court. Where a defendant's proffered instruction has an evidentiary basis, properly states the law, and is the only instruction presenting his theory of the case, refusal to grant it constitutes reversible error.
Humphrey v. State, 759 So.2d 368 (¶ 33) (Miss.2000) (citations omitted).
¶ 22. In his brief, Roberson indicates that the jury was not fully and accurately informed of the law governing the case at trial. The record reveals the following:
BY THE COURT: Okay. You want a self-defense instruction is what you're telling me and these are the last two you have?
. . . .
BY MR. ROSSI: The State objects to D-6 and D-8 on two bases. One is that neither one of these instructions are correct statements of the law. The Robinson case clearly outlines and is the long-standing case in the state of Mississippi defining self-defense....
. . . .
BY THE COURT: That's the law. I have familiarized myself with the law on this case. 87-315[sic] is justifiable homicide what the State has indicated. I'm going to give S-3. I'm going to put refused. I'm going to refuse D-6 and D-8.
While Roberson offered instruction D-8, he did not object to the State's instruction. Before an instruction may be granted, there must be in the record an evidentiary basis for it. Catchings v. State, 684 So.2d 591, 595-96 (Miss.1996). There was no testimony or evidence of self-defense. Therefore, we find this issue to be without merit.
IV.
Did the trial court err by instructing the jury in accordance with both the defense requested instruction number D-2 and with prosecution requested jury instruction number S-2?
¶ 23. Roberson contends that the trial court erred by instructing the jury in accordance with his instruction D-2 and the State's instruction S-2. Instruction D-2 is stated as follows:
In order to find Anthony Roberson guilty of manslaughter you must find that he killed Tommy Cotton by culpable negligence. Culpable negligence is defined as the omission to do something which a reasonable, prudent person would do, or the doing of something which a reasonable, prudent person would not do, under the circumstances surrounding the particular case. Culpable negligence must be ascertained from the facts of each case.
Instruction S-2 is stated as follows:
The Court instructs the jury that manslaughter is the killing of a human being *305 by the culpable negligence of another, and if you believe from the evidence in this case beyond a reasonable doubt that ANTHONY ROBERSON on September 4, 2000, did kill Tommy Cotton, a human being, by an act of culpable negligence which is more than gross negligence and constitutes a departure from what would be the conduct of an ordinarily careful and prudent person under the same circumstances, so as to evince an indifference to the consequences of such acts, then and in that event you should find the defendant, ANTHONY ROBERSON, guilty as charged.
¶ 24. Roberson maintains that neither of the above instructions fully, fairly and adequately informed the jury as to the elements of the offense. He indicates that "the State's instruction diminishes the level of departure from standards of ordinary care which will elevate ordinary negligence to culpable negligence as contemplated by Mississippi Code Annotated Section 97-3-47 (Rev.2000)."[3]
¶ 25. However, Roberson acknowledges that his instruction makes no distinction at all between culpable negligence and ordinary negligence. Because it is the State's duty to prove every element of the crime beyond a reasonable doubt, the State also has a duty to make sure the jury is properly instructed with regard to the essential elements of the crime. Reddix v. State, 731 So.2d 591(¶ 4) (Miss.1999). "It is rudimentary that the jury must be instructed regarding the elements of the crime with which the defendant is charged." Id.
¶ 26. The defense counsel and the State discussed jury instructions D-2 and S-2 regarding what constitutes culpable negligence with the trial judge. The trial judge determined that instruction S-2 provided an adequate meaning of culpable negligence and allowed the instruction to be given to the jury.
¶ 27. After discussion of jury instruction D-2, the trial judge modified this instruction and noted there was no objection to the modification. Failure to offer a timely objection to an instruction at trial constitutes a waiver of the issue on appeal. Brown v. State, 764 So.2d 463 (¶¶ 20, 21) (Miss.Ct.App.2000). Therefore, we find no error on this issue.
V.
Did the trial court err by overruling the defendant's motion for directed verdict made at the close of all the proof?
¶ 28. Roberson contends that the trial court erred by overruling his motion for directed verdict. Roberson relies on Weathersby v. State, 165 Miss. 207, 147 So. 481, 482 (1933), which states that:
Where the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge.
¶ 29. Roberson indicates that there is no other evidence of the circumstances which surrounded this shooting other than the accounts given by him and his wife as eyewitnesses. Roberson's reliance on Weathersby is misplaced. Weathersby *306 only has application when the testimony is uncontradicted. The location of the body, the lack of a blood trail, the location of the wound and the location of the shell casings all contradict Roberson's claim of self-defense.
¶ 30. This issue is without merit.
¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF QUITMAN COUNTY OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FOUR YEARS SUSPENDED IS AFFIRMED. SENTENCE TO RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. ALL COSTS ARE ASSESSED AGAINST THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.
NOTES
[1] Instruction D-8: The Court instructs the jury that the Defendant, Anthony Roberson, was at the time of the shooting of Tommy Cotton entitled to act upon appearances, and if the conduct of the deceased, Tommy Cotton, was such as to induce in the mind of a reasonable person, situated as Anthony Roberson was, under all the circumstances that existed, and viewed from the standpoint of Anthony Roberson, a fear that death or great bodily harm was about to be inflicted by the deceased on her [sic], it does not matter if there was no such danger provided that the jury believes that Anthony Roberson acted in self-defense from real and honest conviction. Under those circumstances then the jury should find Anthony Roberson "Not Guilty", even though the jury might believe that at the time he was actually mistaken and that he was not in any great danger.
[2] Instruction S-3: The Court instructs the jury that to make an assault justifiable on the grounds of self-defense, the danger to the defendant, ANTHONY ROBERSON, must be either actual, present and urgent, or the defendant, ANTHONY ROBERSON, must have reasonable grounds to apprehend a design on the part of the victim, Tommy Cotton, to kill him or do him some great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the grounds upon which the defendant, ANTHONY ROBERSON, acts.
[3] Mississippi Code Annotated Section 97-3-47 (Rev.2000) provides: Homicide; all other killings: Every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this title, shall be manslaughter.