919 So.2d 1137 (2005)
Harold Loyde MILLER, III, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-00089-COA.
Court of Appeals of Mississippi.
October 11, 2005.
*1139 Julie Ann Epps, Samuel H. Wilkins, Jackson, attorneys for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before KING, C.J., MYERS and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. Harold Loyde Miller, III appeals his conviction for manslaughter. Finding no error, we affirm.

STATEMENT OF FACTS
¶ 2. In the early morning hours of September 3, 1999, Amanda Duncan was visiting her friends, Jonathan Fuller and Lacey Slater, at their apartment in Clinton, Mississippi. During her visit, Duncan got into an argument on the telephone with her boyfriend, James Drake. During the conversation, Drake told Duncan that he was planning on coming over to the apartment. Since they had been arguing, Duncan decided to leave so that she would not be there when he arrived. Duncan left the apartment and drove around for a while in her car. While Duncan was driving around, Drake arrived at the apartment. Duncan returned to the apartment complex a short while later.
¶ 3. As Duncan arrived back at the apartment complex, Harold Miller happened to pull up in his vehicle; Miller was also on his way to visit Fuller and Slater at their apartment. As Duncan and Miller were walking together toward the building, Drake came outside. Seeing Duncan and Miller together, Drake believed that Duncan was cheating on him with Miller. Drake proceeded to assault Miller, hitting him twice in the face. Drake's second blow knocked Miller to the ground. Drake then got down and looked at Miller, asked him if he was all right, then followed Duncan into the apartment.
¶ 4. Once inside, Duncan and Drake talked for about two minutes. During that time, Duncan convinced Drake that she and Miller were not cheating on him. Concerned that he had hurt Miller, Drake went back outside to check on him. About a minute after Drake left the apartment, Duncan answered Miller's knock at the door. Once Duncan opened the door, Miller announced that he had "shot his ass." Duncan went outside to find Drake lying on the ground on his stomach. Drake died a short time later from a single gunshot wound to the heart.
¶ 5. Police officers responded to the scene. Miller admitted shooting Drake and was arrested. He was then treated for the facial abrasions and the laceration caused by Drake's assault. The treating physician classified Miller's injuries as minor. The doctor testified that in his expert opinion Miller had not received a serious beating and he did not suffer any serious bodily injury.
¶ 6. In October 2002, Miller was convicted by a jury of manslaughter. His subsequent motion for a new trial or, in the alternative a judgment notwithstanding the verdict, was denied. Aggrieved by his conviction, Miller appeals to this Court *1140 asserting the following: (1) whether the conviction should be reversed and rendered because the evidence was insufficient under Weathersby v. State; (2) whether the jury instructions impermissibly shifted the burden of proving self-defense to the defendant and confused the jury about the burden of proof; (3) whether a new trial should be granted because the trial court erred in admitting improper expert testimony; (4) whether Miller's conviction should be reversed because the State knowingly relied on false evidence; (5) whether the conviction should be reversed because the evidence was insufficient as a matter of law to support the conviction; and (6) whether a new trial should be granted because of the State's failure to disclose exculpatory evidence.

ISSUES AND ANALYSIS

I. Whether the conviction should be reversed and rendered because the evidence was insufficient under Weathersby v. State.

¶ 7. Miller argues that since he was the only eyewitness to the homicide, and his version established that he was acting in self-defense, he was entitled to the benefit of the Weathersby rule. As such, he argues that the trial court should have granted his request for a directed verdict or a peremptory instruction. See Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933). In Weathersby, the Mississippi Supreme Court held "that where the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the [S]tate, or by the physical facts or by the facts of common knowledge." Weathersby, 165 Miss. at 209, 147 So. at 482. Miller attempts to support his argument that the Weathersby rule applies by challenging the credibility of the State's witnesses who contradicted Miller's version of the events which resulted in Drake's death. We find this attempt to be unsuccessful.
¶ 8. Miller maintained at trial that he was savagely beaten by Drake a few minutes before he shot Drake. Miller also testified repeatedly that after the assault, his only thought and intention was to get away from the scene. However, the State offered testimony from another resident of the apartment complex, Beverly Williams, who awoke to the noise of the initial argument and assault that night. She testified that she looked out her window and observed from approximately fifty to seventy-five feet away Miller walking alone from the parking lot area toward the apartment Duncan and Drake were in during the period after the assault and before the gunfire. The State also offered testimony from the emergency room physician, Dr. Jeffrey Hubacek, who examined and treated Miller in the hospital the night of Drake's killing. Dr. Hubacek testified that in his expert opinion Miller's injuries were minor, and that Miller had not received a serious beating, and that he did not suffer any serious bodily injury.
¶ 9. Based on a thorough review of the record evidence, we conclude that the testimony from both the neighbor and the doctor contradicted in material particulars Miller's version that he was savagely beaten by Drake and that he was attempting to leave the scene. Furthermore, Miller's version of the events of that night was also substantially contradicted in material particulars by the expert medical witness's testimony offered by the State, which indicated that Drake fell mortally wounded in a location which was inconsistent with Miller's version.
¶ 10. With this record testimony in mind, we refuse Miller's invitation to *1141 weigh the credibility of the State's witnesses and to find that the trial court erred in refusing to apply the Weathersby rule. "The jury is the sole judge of the credibility of witnesses." Torrey v. State, 891 So.2d 188, 192(¶ 20) (Miss.2004). In as much as Weathersby only applies when the evidence is uncontradicted, we specifically find this argument to be without merit. Roberson v. State, 838 So.2d 298, 305(¶ 29) (Miss.Ct.App.2002).

II. Whether the jury instructions impermissibly shifted the burden of proving self-defense to the defendant and confused the jury about the burden of proof.
¶ 11. Miller asserts that Mississippi law does not require a defendant to prove that he acted in self-defense. Miller argues that if the evidence creates a reasonable doubt as to whether the conditions were such that he acted in self-defense, the defendant must be found not guilty. Miller maintains that the trial court erred in its instruction to the jury by placing the burden on Miller to prove that he acted in self-defense. See Sandstrom v. Montana, 442 U.S. 510, 524, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); Sloan v. State, 368 So.2d 228, 229 (Miss.1979).
¶ 12. The standard of review for a challenge to jury instructions requires that the instructions must be read as a whole, and when so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. Williams v. State, 803 So.2d 1159, 1161(¶ 7) (Miss.2001).
¶ 13. Miller objected at trial to Jury Instruction No. 12 which read as follows:
The Court instructs the Jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or to do him some great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the Jury to determine the reasonableness of the grounds upon which the defendant acts.
¶ 14. The trial judge overruled Miller's objection to the instruction reasoning that the instruction contained language identical to the self-defense instruction approved by the Mississippi Supreme Court in Montana v. State, 822 So.2d 954, 959(¶ 13) (Miss.2002). Our review of the instruction at issue in this appeal and the instruction given in Montana reveals that the only semantic distinction involves the underlying criminal offense charged against the respective defendants.
¶ 15. More importantly, the jury in this case was also charged with Jury Instruction No. 11 which reads as follows:
The Court instructs the jury that you must find the defendant, . . ., "not guilty" if you believe that he acted in necessary self-defense. The defendant, however, is not required to prove that he acted in necessary self-defense. If evidence of such self-defense, if any, raises a reasonable doubt of his guilt, then you must find the defendant, . . ., "not guilty." The burden is on the State to prove beyond a reasonable doubt that the defendant did not act in necessary self-defense as defined in other instructions of the Court.
(emphasis added).
¶ 16. Based on a thorough review of all of the instructions to the jury, this Court concludes that the instructions given, when read as a whole, comport with the constitutional requirements of both the United States and the State of Mississippi, and *1142 that the instructions fairly announce the law of the case and create no injustice. We specifically find that the instructions properly placed the burden of proof on the State as to the issue of self-defense, and that the instructions accurately instructed the jury as to the law of self-defense. Miller's argument to the contrary is without merit.

III. Whether a new trial should be granted because the trial court erred in admitting improper expert testimony.
¶ 17. Miller asserts that his conviction should be reversed because it was based in large part on Dr. Hubacek's testimony that Drake fell to the ground much closer to where he was shot than Miller claimed he did in his version of the facts from that night. The doctor testified that based on his medical experience and information provided to him by the paramedics on the scene, Drake could not have traveled as far as Miller claimed based on the nature of the wound to Drake's heart. Miller argues here, as he did in the trial court, that Dr. Hubacek's opinion was inadmissible because it was not based on evidence reasonably relied on by physicians in forming a medical opinion on such matters.
¶ 18. Miller's objection at trial was overruled based on M.R.E. 703, which states:
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
¶ 19. Moreover, the comment to M.R.E. 703 specifically addresses physicians and acknowledges that they base their medical opinions on many sources, and "[s]ince these sources provide the doctor with information that he utilizes in making life-and-death decisions, his validation of them ought to be sufficient for trial, especially since he can be cross-examined."
¶ 20. The standard of review for a challenge to the admissibility of evidence is abuse of discretion, and the appellate court may only reverse when an abuse of discretion is found. Kolberg v. State, 829 So.2d 29, 55(¶ 52) (Miss.2002).
¶ 21. As to the issue of admissibility, the Mississippi Rules of Evidence provide in part that evidence is admissible if it has any tendency to make a fact of consequence to the determination of the case more probable or less probable, so long as the probative value of the evidence is not outweighed by its tendency to mislead, to confuse, or to prejudice the jury. See M.R.E. 401 and 403.
¶ 22. The record clearly reflects that Dr. Hubacek was the physician who treated Drake when he was brought to the emergency room with the bullet wound to his heart. The testimony reflects that the doctor's attempted life-saving efforts on Drake were based on both his medical expertise and the information provided to him by the paramedics who brought Drake to the emergency room. We conclude that Dr. Hubacek's validation of the paramedics' information was also sufficient to serve as a basis for his expert medical opinion. Furthermore, we note that Dr. Hubacek testified that his expert opinion was based in part on the information provided to him by the paramedics, which is information reasonably relied upon by an expert in the field of emergency medicine, but was also based his first-hand experience treating between three and six victims with a similar gunshot wound. In contrast, Miller's *1143 expert witness, who contradicted Dr. Hubacek's testimony and supported Miller's version of the events, testified that his expert opinion was based on his first-hand knowledge from evaluating several thousand victims with similar gunshot wounds.
¶ 23. Based on the record evidence, the Mississippi Rules of Evidence, and the fact that the State's expert witness was subject to the crucible of cross-examination, we conclude that the trial court did not abuse its discretion. We specifically find that the State's expert witness testimony was admissible and no reversible error occurred in the trial court as to this issue.

IV. Whether Miller's conviction should be reversed because the State knowingly relied on false evidence.
¶ 24. Miller argues that his conviction should be reversed because the State knowingly presented misleading information to the jury. See United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Prior to trial, Miller's motion in limine was granted by the trial court to prevent the State from eliciting testimony relating to the fact that Drake was an organ donor who had donated his eyes and his bones. At trial, the State declined to present testimony from the forensic pathologist who performed the autopsy on Drake because his expert opinion as to the location on Drake's body where he was shot did not support its theory of the case. Instead, the State impeached the pathologist as to the height that he measured Drake's body. Various prosecution witnesses testified that Drake was over six feet tall, however, the pathologist measured Drake at five feet seven inches tall. Miller argues that in an attempt to discredit the pathologist, the State deliberately gave the jury the false impression that the pathologist had mismeasured Drake's body and was, therefore, not competent.
¶ 25. Before proceeding, we again state that the standard of review for the admission or exclusion of evidence is abuse of discretion. Kolberg v. State, 829 So.2d 29, 61(¶ 83) (Miss.2002).
¶ 26. The State points out that the prosecutor told the court that she did not know whether the bones had been harvested before or after the autopsy, and that there is nothing in the record to refute the prosecutor's statement. After a thorough review of the record, we agree. Although it is clear that the pathologist told the prosecutor prior to trial that some of Drake's bones had been removed, nowhere in the record is it indicated whether the removal occurred before or after Drake was measured by the pathologist. When Miller objected at trial to the question, the trial judge allowed the State to ask only about the height measurement, telling Miller that he "could not have his cake and eat it too" in reference to the motion in limine. Consistent with Kolberg, this issue was a matter of discretion for the trial court, and this Court will not engage in conjecture beyond the record. This Court does not act upon unsupported representations of fact, but rather is bound by the matters contained within the official record. King v. State, 857 So.2d 702, 718(¶ 32) (Miss.2003) (citations omitted). After a detailed review, we find this assignment of error without merit.

V. Whether the conviction should be reversed because the evidence was insufficient as a matter of law to support the conviction.
¶ 27. Miller was indicted for manslaughter pursuant to Mississippi Code Annotated § 97-3-35 (Rev. 2000). Therefore, the State was required to prove beyond a reasonable doubt that Miller killed *1144 Drake "without malice, in the heat of passion. . . by the means of a deadly weapon, without authority of law, and not in necessary self-defense" in the First Judicial District of Hinds County. Miss.Code Ann. § 97-3-35.
¶ 28. The Mississippi Supreme Court has consistently held that when reviewing a challenge to the sufficiency of the evidence, an appellate court must consider all of the evidence in the light most consistent with the verdict, and the State must be given the benefit of all inferences favorable to the verdict. Taylor v. State, 672 So.2d 1246, 1255 (Miss.1996). Furthermore, when the record evidence is such that reasonable jurors could have found the defendant guilty, the verdict is beyond the appellate court's authority to disturb. Id.
¶ 29. With this standard of review in mind, this Court must consider whether the evidence offered by the State had the requisite sufficiency to prove beyond a reasonable doubt that Miller killed Drake without malice, in the heat of passion, by means of a deadly weapon, without authority of law, and not in necessary self-defense in the First Judicial District of Hinds County.
¶ 30. We begin our analysis with the undisputed issues of jurisdiction and cause of death. The record reflects undisputed testimony that Drake was killed in Clinton, Mississippi which is in the First Judicial District of Hinds County. Furthermore, Miller himself admitted that he shot Drake, and the record contains undisputed medical testimony reflecting that Drake's death was caused by a single gunshot wound to the chest which pierced his heart.
¶ 31. The sole issue in dispute for the jury was whether Miller unlawfully killed Drake. Miller's theory of the case was that he killed Drake because he feared for his life after having been savagely beaten by Drake just minutes before the shooting. Miller testified that he was punched, kicked, and stomped repeatedly by Drake. However, the State's expert medical witness, who examined Miller in the emergency room the night of the killing, testified that Miller's injuries were minor and not the result of a severe beating. The doctor further testified that after he performed an extensive examination of Miller, including X-rays and a CT scan, he concluded that Miller had not suffered any serious bodily injury. The record reflects that Miller only needed a few stitches to close a small cut on his forehead. Miller also testified that after he was assaulted by Drake, his only intention was to leave the area. However, Beverly Williams testified that she saw Miller walking toward the apartment before the gunfire, which was in direct conflict with Miller's testimony that he did not walk toward the building. Williams's testimony was corroborated by Dr. Hubacek's testimony that Drake could not have walked from the parking lot, where Miller claimed to have shot him, to where Drake collapsed on the ground, due to the nature of the gunshot wound to his heart. Miller claimed he was groggy and could not remember many of the details of the shooting, however, he admitted making multiple decisions in the time between the initial assault and when he shot Drake including decisions: not to drive away from the scene, not to call the police, not to seek assistance in one of the other apartments, and not to lock himself in his car. The jury heard testimony from Miller that he had the faculties to retrieve his pistol from his vehicle and to arm himself, but not the ability to leave the area or seek assistance. Additionally, the jury heard testimony that after he shot Drake, Miller went to his friends' apartment and announced, "I shot his a* *." In conclusion, *1145 we note that each of the State's witnesses was subjected to cross-examination, and that Miller had every opportunity to present his theory of the case.
¶ 32. After considering all of the evidence in the light most consistent with the verdict, and having given the State the benefit of all inferences favorable to the verdict, we find that a fair and reasonable jury could conclude, based on the sufficiency of the evidence, that Miller killed Drake without malice, in the heat of passion, by means of a deadly weapon, without authority of law, and not in necessary self-defense in the First Judicial District of Hinds County. We conclude that a reasonable jury could determine, based on the record evidence, that Miller acted in the heat of passion in response to Drake's initial assault upon him, and that Miller shot Drake in anger as a result. Therefore, this error is without merit.

VI. Whether a new trial should be granted because of the State's failure to disclose exculpatory evidence.
¶ 33. Finally, Miller argues that his conviction should be reversed because the State failed to disclose exculpatory evidence. See Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, Miller asserts that the State was aware of, and failed to disclose, the fact that Fuller admitted prior to trial that he had used illicit, controlled substances at or near the time that Miller shot Drake. Miller argues that Fuller was one of the State's principal witnesses, and that since evidence of his drug use was relevant, admissible impeachment evidence, the State's failure to disclose such requires a reversal.
¶ 34. The Mississippi Supreme Court has established the following requirements which defendant must prove in order to establish a Brady violation:
(1) that the government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.
King v. State, 656 So.2d 1168, 1174 (Miss. 1995).
¶ 35. The discovery rules implicated by this appeal are set forth in the Uniform Rules of Circuit and County Court. Specifically, URCCC 9.04 A.1 requires that the prosecution disclose to the defendant the substance of any oral statement made by any witness who is to be offered by the prosecution in its case-in-chief, and that the prosecution disclose to the defendant the name and address of each such witness. We emphasize these requirements because although Miller argues that the State withheld a specific fact regarding Fuller, Miller does not claim that the State withheld Fuller's name and address prior to trial. In the absence of any explanation from Miller as to why he could not have obtained the evidence of drug use from Fuller himself with reasonable diligence, this Court concludes that Miller has failed to satisfy the second prong of the King test.
¶ 36. We find that the material portions of Fuller's testimony were corroborated by the other prosecution witnesses. As a result, Miller has also failed to establish the fourth prong of the King test, namely, that a reasonable probability exists that the outcome of the proceedings would have *1146 been different. Therefore, we find this assignment of error to be without merit.
¶ 37. THE JUDGMENT OF THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY OF CONVICTION OF MANSLAUGHTER AND THE SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TEN YEARS TO SERVE, TEN YEARS SUSPENDED, AND FIVE YEARS SUPERVISED PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS AND BARNES, JJ., CONCUR.