KING, C.J.,
 

 for the Court:
 

 ¶ 1. Ellis Grisby and Joby Pam were tried in the Circuit Court of Washington County for attempted armed robbery. Pam was acquitted. Grisby was convicted and sentenced to thirteen years in the custody of the Mississippi Department of Corrections (MDOC), with eight years to serve and five years of post-release supervision. Grisby filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court denied the motion. Aggrieved, Grisby timely filed this appeal, raising three arguments:
 

 I. Whether the prosecution failed to prove venue/jurisdiction;
 

 II. Whether the trial court erred by recalling the jury to read jury instruction D-7; and
 

 III. Whether the verdict is against the overwhelming weight of the evidence.
 

 Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 A. Attempted Armed Robbery
 

 ¶ 2. The attempted armed robbery occurred on August 1, 2005, at approximately 6:00 p.m., in Hollandale, Mississippi. On that night, Howard Sanders arrived home to the ■ sound of his burglar alarm. Sanders entered his home through the back door. As he reached to deactivate the alarm, he was pushed from behind. Sanders turned around to face two masked men brandishing firearms. Sanders testified that the taller man was approximately 5'8" or 5'9"; the shorter man, who was wearing a green shirt, was approximately 5'4" or 5'5".
 

 ¶ 3. The robbers demanded that Sanders deactivate the alarm, but Sanders refused. Then, the phone rang. Sanders informed the robbers that the security company was calling and that the police would soon be on their way. As the taller man turned to flee, the shorter man discharged his weapon in Sanders’s home. Pretending to be wounded, Sanders fell to the ground, causing the shorter man to flee.
 

 ¶ 4. After the robbers left, Sanders answered the phone and alerted the security company to contact the police. Sanders then went outside to see in which direction the suspects fled, but they had already disappeared. Sanders approached several young men, who were playing football in the street, and they shared what they had witnessed. The young men also gave statements to the police.
 

 B. Witnesses
 

 ¶ 5. Jack Winder Jr. testified that he was playing football in the street with his friends at the time of the robbery. During their game, two men, one he called “Peanut,” walked out of an alley, passed them, and walked across the railroad tracks. Winder identified Grisby in court as “Peanut” and testified that Grisby was wearing a green shirt that day. Although Winder
 
 *170
 
 could not identify the second man by name, he identified Pam as the person who was accompanying Grisby; he testified that Pam was wearing a red shirt that day. A few moments later, Winder heard Sanders’s burglar alarm and then a gunshot. Winder ran away from the commotion. He testified that he heard Sanders’s fence rattle, but the tall grass behind the fence obstructed his view.
 

 ¶6. Alfred Seals could not identify the men by name, but he identified Grisby and Pam in court as the two men who had walked down the street during their football game. He testified that one man was wearing a green shirt, and the other man was wearing a red shirt. After the men crossed the railroad track, Seals did not see them anymore. The teenagers continued to play football. Then, Seals heard Sanders’s burglar alarm, and he heard a gunshot seconds later. Seals ran toward Sanders’s home to see what had happened. Seals testified that he saw a man wearing a green shirt run behind Sanders’s fence.
 

 ¶ 7. Kentavius Vallery testified that several people walked down the street during their football game. He recalled seeing Grisby and Pam walk down the street. He testified that one of them was wearing a red shirt. Vallery also heard Sanders’s burglar alarm; seconds later, he heard a gunshot. Vallery ran away from Sanders’s home, and he did not see or hear anything else.
 

 C. Police Investigation
 

 ¶ 8. Based on this information, the police arrested Grisby and Pam, who were both dressed differently than the witnesses had described. The police obtained a search warrant to search Grisby” s home for evidence. There, the police found a damp, green shirt in a laundry basket. None of the witnesses were asked to identify whether this green shirt was the same green shirt that Grisby was wearing on the day of the incident.
 

 ¶ 9. The police performed gunshot-residue tests on Grisby and Pam; both results were negative. Johnny Spand, the assistant chief investigator for the Hollandale Police Department, testified that the witnesses identified Grisby and Pam in a photographic lineup. On cross-examination, Spand testified that Sanders had filed a police report one month prior to the incident in which he had reported that his neighbor told him that he had overheard Grisby and another man named Marquis Driver discussing plans to rob Sanders’s home. This testimony was received without an objection.
 

 D. Alibi Witnesses
 

 ¶ 10. Grisby and Pam both presented alibi witnesses. Marcus Cole and Nicholas Cain testified as alibi witnesses for Grisby. Cole testified that on the day of the incident, he was with Grisby from 11:00 a.m. to 6:30 p.m. They played basketball until Grisby fell and cut his hand. Then, they went to Grisby’s home where he cleaned his wound. They later went to “the tree,” which is located in a vacant lot across from Smitty’s Convenience Store, to play cards. Cain testified that he also played basketball with Grisby that day, and he saw Grisby under “the tree” at 5:30 p.m. Other witnesses placed Pam at “the tree” around the same time.
 

 ¶ 11. Grisby also testified. He stated that he was playing basketball earlier that day until he fell and injured his hand. He went to “the tree” at 5:15 p.m. and later went to Smitty’s. Grisby testified that he did not leave the area until the police arrested him at 7:00 p.m. Grisby admitted that his nickname is “Peanut” and that he is approximately 5'3" or 5'4". Grisby also stated that he knew Pam, but they did not socialize with each other.
 

 
 *171
 
 E. Jury Instructions
 

 ¶ 12. After the defense rested, the trial court and the parties went over the jury instructions. Grisby’s trial counsel, who is also his counsel on appeal, asked the trial court to include Grisby in all applicable jury instructions that were submitted on behalf of Pam. The trial court informed Grisby’s trial counsel that he should submit his own jury instructions, but the trial court agreed to do so. Pam submitted jury instruction D-7, which instructed the jury how to consider identification evidence.
 
 See
 
 app. A.
 
 [1]
 
 The jury instruction contained several references to Pam. The trial court added a paragraph at the end of the instruction that instructed the jury to apply the same considerations to the identification evidence concerning Grisby. Grisby’s trial counsel did not object to the addition of this paragraph.
 

 ¶ 13. Upon completion of the jury instruction conference, the jury was called in; the trial court read the jury instructions; and the parties presented their closing arguments. After closing arguments, the jury retired to deliberate at 12:25 p.m. Shortly thereafter, Pam’s trial counsel realized that the trial court had failed to read jury instruction D-7 to the jury. Without objection, the trial court recalled the jury and read jury instruction D-7. The jury again retired to deliberate at 12:30 p.m.
 

 ¶ 14. The jury returned with its verdict. Pam was acquitted. Grisby, however, was found guilty of attempted armed robbery.
 

 ANALYSIS
 

 A. Venue/Jurisdiction
 

 ¶ 15. Grisby argues that the State failed to prove venue and jurisdiction pursuant to Mississippi Code Annotated section 99-11-3(1) (Rev.2007). Section 99-11-3(1) provides, in pertinent part, that: “[T]he local jurisdiction of all offenses, unless otherwise provided by law, shall be in the county where committed.” Through direct or circumstantial evidence, the State must prove venue beyond a reasonable doubt.
 
 Hill v. State,
 
 797 So.2d 914, 916 (¶ 10) (Miss.2001). The failure to do so “would constitute an insufficiency in the evidence.”
 
 Thomas v. State,
 
 784 So.2d 247, 249 (¶ 6) (Miss.Ct.App.2000).
 

 ¶ 16. The attempted robbery took place in Sanders’s home. Sanders testified at trial that his home is located in Hollan-dale, Mississippi, in Washington County. Additionally, law enforcement from the Hollandale Police Department and the Washington County Sheriffs Department confirmed Sanders’s address. Thus, we find that there was direct evidence to establish Washington County as the proper venue. This argument is without merit.
 

 B. Jury Instruction D-7
 

 ¶ 17. Grisby argues that the trial court erred by recalling the jury to read jury instruction D-7. Specifically, Grisby contends that the instruction improperly singled out evidence against him and that the timing of the reading of the jury instruction negatively influenced the jury to acquit Pam.
 

 ¶ 18. Jury instruction D-7 was submitted by Pam. However, Grisby’s trial counsel asked the trial court to include Grisby in any jury instruction that was submitted on behalf of Pam. The trial court obliged and modified the jury instruction, adding Grisby. The trial court read its proposed modification aloud, and Grisby raised no objection. Grisby also did not object when the trial court recalled the jury to read the instruction.
 

 
 *172
 
 ¶ 19. Grisby’s failure to lodge a contemporaneous objection to the reading of the jury instruction waives the issue on appeal.
 
 See Roberson v. State,
 
 838 So.2d 298, 305 (¶ 27) (Miss.Ct.App.2002). Furthermore, “[i]t is a familiar rule of law that one may not complain of his own [jury] instruction.”
 
 Caston v. State,
 
 823 So.2d 473, 508 (¶ 121) (Miss.2002) (quoting
 
 Hall v. State,
 
 420 So.2d 1381, 1386 (Miss.1982)). Because Grisby jointly offered jury instruction D-7, we find that this issue is procedurally barred from review.
 

 C. Weight of the Evidence
 

 ¶ 20. Grisby argues that the trial court erred by denying his motion for a directed verdict. However, Grisby’s argument focuses on the weight of the evidence.
 

 ¶ 21. When determining whether the jury’s verdict is against the overwhelming weight of the evidence, the evidence is viewed in the light most favorable to the verdict.
 
 Bush v. State,
 
 895 So.2d 836, 844 (¶ 18) (Miss.2005). This Court will not disturb the jury’s verdict unless “it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Id.
 

 ¶ 22. Grisby contends that the evidence against him and Pam is similar; thus, it is unconscionable that the jury acquitted Pam but found him guilty of the charge. However, the jury does not have to reach the same result with both defendants. In
 
 Newell v. State,
 
 308 So.2d 68, 69 (Miss.1975), the evidence against two co-defendants was essentially the same. However, the jury acquitted one defendant and found the other defendant guilty.
 
 Id.
 
 The convicted defendant appealed the jury’s verdict. On appeal, the Mississippi Supreme Court ruled that:
 

 If the defendants ... had been tried separately on the same indictment and the testimony had been identical in both cases, an acquittal of one would not affect a verdict of guilty as to the other. The rule should be the same when they are tried together.
 

 Id.
 
 at 70. Thus, we will not reverse Gris-by’s conviction based simply on Pam’s acquittal.
 

 ¶ 23. Grisby also argues that the State failed to prove that he committed the crime beyond a reasonable doubt because Sanders could not identify the suspects; the green shirt found at Grisby’s home was not identified; and the gunshot-residue test was negative.
 

 ¶ 24. In regard to Grisby’s gunshot-residue test, a representative from the Mississippi State Crime Laboratory testified that gun-powder residue is removed over time. For instance, if a person washes his hands, the residue is gone. Therefore, “a negative result of a gun[-]powder[-residue] test would not conclusively prove [the defendant’s] innocence.”
 
 Sanders v. State,
 
 939 So.2d 842, 849 (¶ 24) (Miss.Ct.App.2006).
 

 ¶ 25. Sanders was not able to identify the robbers because their faces were covered. However, Sanders did testify that one of the robbers was wearing a green shirt, and he was approximately 5'4" or 5'5". Grisby testified that he was approximately 5'3" or 5'4". Winder and Seals testified that they saw Grisby walking in the area of Sanders’s home moments prior to the incident, and Grisby was wearing a green shirt that day. Seals testified that he saw a man, wearing a green shirt, flee from Sanders’s home. In addition, the police found a damp, green shirt in a laundry basket in Grisby’s home.
 

 ¶ 26. With regard to Grisby’s alibi, it is within the jury’s province to determine the weight and credibility of the evidence and to resolve any conflicts in the evidence.
 
 *173
 

 See id.
 
 at 848 (¶ 19). Viewing the evidence in the light most favorable to the verdict, we cannot say that the verdict is against the overwhelming weight of the evidence. Thus, we will not disturb the judgment. This argument is without merit.
 

 CONCLUSION
 

 ¶ 27. We find that the State properly established venue/jurisdiction through the testimony of Sanders, the victim. Because Grisby jointly offered jury instruction D-7, this issue is procedurally barred from review. And the verdict is not against the overwhelming weight of the evidence.
 

 ¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF CONVICTION OF ATTEMPTED ARMED ROBBERY AND SENTENCE OF THIRTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH EIGHT YEARS TO SERVE AND FIVE YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
 

 LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 APPENDIX A
 

 JURY INSTRUCTION NO. D-7
 

 The Court instructs the jury that in reaching your verdict you are to consider all of the evidence concerning the entire case and the circumstances surrounding the crime. One of the issues in this case is the identification of Joby Pam as the perpetrator of the crime charged. As with each element of the crime charged, the State has the burden of proving identity beyond a reasonable doubt, and before you may convict Joby Pam you must be satisfied beyond a reasonable doubt of the accuracy of the identification of Joby Pam. If, after considering all of the evidence concerning the crime charged, including identification testimony of Joby Pam, if any, as one of the people who committed the crime charged, you are not convinced beyond a reasonable doubt that he is the person who committed the crime charged, then you must find him not guilty of the crime charged.
 

 Identification testimony is an expression of belief or impression by the witness. You must judge its value and reliability from the totality of the circumstances surrounding the crime and the subsequent identification. In appraising the identification testimony of a witness, you should consider the following:
 

 1. Did the witness have an adequate opportunity to observe the offender?
 

 2. Did the witness observe the offender with an adequate degree of attention?
 

 3. Did the witness provide an accurate description of the offender after the crime?
 

 4. How certain is the witness of the identification?
 

 5. How much time passed between the crime and the identification?
 

 If, after examining all of the testimony and the evidence, you have a reasonable doubt that Joby Pam was the person who committed the crime charged, then you must find Joby Pam not guilty of the crime charged.
 

 The same issues of identity as explained above relate to your consideration of whether Ellis Grisby was the person who committed the crime charged. Should you have a reasonable doubt as to Ellis Gris-by’s identity as a person who committed
 
 *174
 
 this crime, you must find Ellis Grisby not guilty.
 

 [1]
 

 . Jury instruction D-7 has been recited verbatim in Appendix A.