ROBERTS, J.,
 

 for the Court.
 

 ¶ 1. John Johnson (Johnson) was convicted of armed robbery in the Sunflower
 
 *415
 
 County Circuit Court and sentenced to thirty years in the custody of the Mississippi Department of Corrections. He appeals pro se, asserting: (1) he was denied his right to a speedy trial; (2) the verdict was not supported by sufficient evidence; (3) the circuit court allowed presentation of improper photographic identification testimony; (4) the circuit court improperly allowed the prosecution to amend the indictment; (5) the prosecution made an improper closing argument; (6) he received ineffective assistance of counsel; and (7) cumulative error warrants reversal. Finding no error, we affirm.
 

 FACTS
 

 ¶ 2. On January 7, 2003, Leroy Dan-dridge was working in Drew, Mississippi at Hack’s Produce, an establishment that sold produce and maintained “poker machines” in a separate room in the back of the store. Dandridge testified that he was inside the store with Terry Thurman and a man identified as Mr. Henry when “[t]wo young men came in ... and one of them asked where they uncle at [sic].” Dan-dridge recognized the speaker — Johnson-—■ as the nephew of James Johnson, an individual who sold hamburgers and pork chops out of a truck in the parking lot. However, he did not recognize the second man, who was later identified as Curtis McIntosh. Dandridge told Johnson that he had not seen his uncle that day, and Johnson asked if his uncle had left any wine for him. Dandridge replied in the negative, but offered Johnson samples of homemade wine. Johnson then produced a handgun, and demanded Dandriclge’s money. Dandridge gave Johnson two hundred and seventy dollars from his wallet.
 

 ¶ 3. Johnson told Dandridge to go back into the room where the poker machines were kept. The man who was with Johnson, but whom Dandridge did not know, said “come on let’s go; say, you got — you done got what you came for.” Johnson ignored his companion and ordered the two bystanders, Thurman and Henry, to get on the floor. He ordered Dandridge to open the poker machines. Dandridge complied, but he was unable to state if, or how much, money was taken from them. Johnson told his accomplice to pull out the telephone cord, which the accomplice did, and then the two men left the building and fled the parking lot in “a gray-looking car.” Dandridge reported the crime, identified Johnson by name, and identified Johnson’s accomplice as a taller man wearing “dog tags.”
 

 ¶ 4. One day later, officers with the Drew Police Department stopped a primer gray Buick, driven by McIntosh, who was wearing dog tags; Johnson and three females were passengers in the car. A nine-millimeter pistol was found in the car.
 

 ¶ 5. Dandridge testified that shortly after he reported the crime, he was shown a photograph of a man whom he identified as the robber. The photograph was of Johnson. As will be discussed in more detail in the last assignment of error, Chief Burner Smith testified that he showed Dandridge a group of photographs, rather than a single photograph. At any rate, there is no doubt that Dandridge picked out Johnson’s photograph prior to trial and identified him as the robber.
 

 ¶ 6. At trial, Dandridge said his eyesight prevented him from clearly identifying Johnson in person. He testified that he had not had his glasses on the day he was robbed, but the robber had “a lot of hair up on his head.” Further, he only picked out Johnson’s photograph because of “the hair.” Chief Smith testified that when Johnson was ultimately arrested, he wore his hair “more so in an Afro-type setting,” rather than in “braids,” as he had on the day of the trial. Despite this confusion
 
 *416
 
 due to Dandridge’s eyesight, there is no doubt that Johnson is, in fact, the nephew of the man who sold hamburgers outside of Hack’s Produce.
 

 ¶7. McIntosh testified for the State. His testimony was consistent with Dan-dridge’s. He and Johnson stopped at Hack’s Produce because Johnson was hungry. Once inside the store, Johnson produced a pistol that McIntosh had not been aware Johnson was carrying. Johnson then committed the crime, as described by Dandridge, ordering McIntosh to cooperate. McIntosh identified the pistol found in his car as belonging to Johnson. McIntosh testified in exchange for his charges being dropped. From the record, it also appears that illegal narcotics were found in the vehicle when it was stopped. As discussed later in this opinion, this drug matter also went to trial prior to the disposition of the armed robbery charges against Johnson and McIntosh. However, no mention of the other charges was made during Johnson’s trial.
 

 ANALYSIS
 

 I. SPEEDY TRIAL
 

 ¶ 8. Johnson asserts violations of both his statutory right to a speedy trial, as secured by Mississippi Code Annotated section 99-17-1 (Rev.2007), and his constitutional right to a speedy trial, as secured by the Sixth and Fourteenth Amendments to the United States Constitution and Article 3, Section 26 of the Mississippi Constitution of 1890. However, Johnson never made a written or an ore tenus motion, that his trial should have been barred on speedy trial grounds. Further, Johnson’s motion for a new trial did not allege a speedy trial violation. When a defendant fails to file such a motion, and thereby obtain specific findings of fact going to an alleged deprivation of the right to a speedy trial, the issue is barred from appellate review unless an appellate court finds plain error.
 
 Sanders v. State,
 
 678 So.2d 663, 670-71 (Miss.1996). The supreme court reiterated that this procedural bar arises when a defendant fails to move for dismissal, holding that in order to show plain error, a defendant must show that the denial of a speedy trial so impacted an accused’s rights that it “generate® a miscarriage of justice.”
 
 Dora v. State,
 
 986 So.2d 917, (¶ 19) (Miss.2008) (quoting
 
 Morgan v. State,
 
 793 So.2d 615, 617(¶ 9) (Miss.2001)).
 
 [1]
 
 In considering a speedy trial claim for plain-error analysis, an appellate court looks to whether there is a trial court error that impacted a fundamental right resulting in a miscarriage of justice.
 
 Sanders,
 
 678 So.2d at 670. Although we conclude the speedy trial issue is procedurally barred and the plain-error doctrine inapplicable, for the sake of discussion, we will briefly address the merits of this issue.
 

 A. CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL
 

 ¶ 9. The constitutional right to a speedy trial attaches at the time of arrest. An alleged violation of the constitutional right to a speedy trial is subject to the four-part test announced in
 
 Barker v. Wingo,
 
 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The four factors are as follows: (1) the length of the delay, (2) the reason for delay, (3) the defendant’s assertion of his right to a speedy trial, and (4) prejudice to the defendant by the delay.
 
 Id.
 
 at 530, 92 S.Ct. 2182. No one factor is dispositive.
 
 Skaggs v. State,
 
 676 So.2d 897, 900 (Miss.1996). Rather, an appellate court looks to the totality of the circumstances.
 
 Herring v. State,
 
 691 So.2d 948, 955 (Miss.1997).
 

 
 *417
 
 1. LENGTH OF DELAY
 

 ¶ 10. The supreme court presumes that the accused has been prejudiced if there has been a delay of eight months or more between the date the right to a speedy trial attached and the date of the trial.
 
 Simmons v. State,
 
 678 So.2d 688, 686 (Miss.1996). In this case, more than 600 days elapsed between Johnson’s arrest and his trial, well beyond the eight-month threshold for a presumption of prejudice.
 

 2. REASON FOR THE DELAY
 

 ¶ 11. Johnson was arrested on January 8, 2003. The record shows that McIntosh was arraigned on September 15, 2003, regarding the indictment for armed robbery with Johnson as his co-defendant. Johnson, however, had been released from jail on bond and could not be found for arraignment. A warrant for his arrest was issued, and sureties were called on his bond on September 16, 2003. Johnson was re-arrested on October 28, 2003. Johnson’s and McIntosh’s initial trial setting was scheduled for October 29, 2003.
 

 ¶ 12. The record shows that witnesses for the State were subpoenaed for trial set for October 29, 2003. However, Johnson’s co-defendant, McIntosh, moved for a continuance, and the trial was continued to June 16, 2004.
 

 ¶ 13. Johnson filed a demand for a speedy trial on February 5, 2004, but there was no motion to sever his case from McIntosh’s case. Immediately after Johnson’s demand for a speedy trial, the trial court advanced Johnson’s scheduled trial date from June 16, 2004, back to February 18, 2004. The State again subpoenaed its witnesses.
 

 ¶ 14. The record is not entirely clear, but it appears that the trial was bumped because of another trial already in progress on February 18 and 19, 2004. On motion by the State, the trial court found good cause to continue the case and no prejudice to the defendant. The case was then scheduled to be tried on June 16, 2004.
 

 ¶ 15. On June 16, 2004, the State made a motion to continue the trial because it had been unable to locate Dandridge, the victim and an essential witness, after a diligent search. Therefore, the trial court found good cause — Dandridge being an essential witness and a diligent search — and no prejudice to the defendant. There also appears to have been a motion for a continuance dated June 17, 2004, stating that Dandridge did in fact appear on June 17, 2004, but he became ill and had to leave the courthouse. The case was rescheduled for the next court term.
 

 ¶ 16. During the next court term, it appears that Johnson was tried on the drug charge.
 
 [2]
 
 A subsequent motion for a continuance filed by McIntosh stated that he testified against Johnson, but a hung jury resulted in a mistrial. If Johnson had been tried for the drug charge, good cause for a continuance existed, because obvious prejudice would occur if the same jury of veniremen were voir dired on two separate charges against Johnson.
 

 ¶ 17. The case was reset for the next term of court to be tried on October 26, 2004. On October 25, 2004, McIntosh’s counsel filed another motion for a continuance, apparently based on his desire to retry the drug charge before the armed robbery charge. McIntosh’s attorney thought that the district attorney had no objection to retrying Johnson’s mistried
 
 *418
 
 case first. The trial judge granted the motion on October 25, 2004. Again, Johnson filed no motion to sever. Ultimately, the trial was held two weeks later on November 9, 2004.
 

 ¶ 18. It appears from the record before us that approximately 678 days expired between the time of Johnson’s arrest until his trial. The record shows
 
 at a minimum
 
 that Johnson jumped his appearance bond for approximately 43 days. The record clearly shows that the State had subpoenaed witnesses and stood ready to select a jury on the day after Johnson’s rearrest, October 29, 2003, and Johnson acquiesced to McIntosh’s continuance until he filed his motion for a speedy trial, approximately 99 days later, on February 5, 2004.
 

 ¶ 19. McIntosh’s two motions for continuances accounted for approximately 110 days, and beyond question, these days cannot be attributed to the State. Johnson never made a motion to sever his case from McIntosh’s case, and the record does not indicate any reason the State might have had to oppose any motion to sever, if one had been made. However, the scant record before us shows that the delays attributable to the State were for good cause, i.e., a sick material witness, a crowded trial docket, and trial of Johnson and McIntosh for the drug charges.
 

 ¶ 20. We do not mean to say that a defendant waives his speedy-trial rights when he jumps an appearance bond and fails to instruct his attorney to obtain the earliest possible trial, nor does he waive his speedy-trial rights when he acquiesces to a co-defendant’s motions for time. However, these factors must be weighed in the totality of circumstances. This is particularly true in a case such as this one, where the record shows the State was in good faith attempting to try Johnson before he jumped his bond and, belatedly, asserted his right to a speedy trial. Moreover, a delay for good cause is not counted as heavily as is delay without good-cause. Johnson failed to present this issue to the trial court, which deprives us from knowing exactly what delay would have been attributed to the State and how much weight such delay would have been given. Nevertheless, it is clear that both Johnson and the State were responsible for delay, and while the record shows good cause for all delay attributable to the State, the record does not show good cause present for the delay attributable in all, or in part, to Johnson.
 

 3. JOHNSON’S ASSERTION OF HIS RIGHT TO A SPEEDY TRIAL
 

 ¶ 21. There is no doubt that Johnson asserted his right to a speedy trial by filing his demand for a speedy trial on February 5, 2004. However, an assertion of the right via a demand for a speedy trial is separate and distinct from a motion to dismiss for failure to provide a speedy trial.
 
 Perry v. State,
 
 637 So.2d 871, 875 (Miss.1994). A demand for a speedy trial seeks trial, while a motion to dismiss seeks a dismissal of the charges.
 
 Id.
 
 A demand for a speedy trial is an assertion of a defendant’s constitutional rights, but it is the motion to dismiss that requires a circuit court to determine whether a denial of these rights requires the dismissal of charges.
 
 Guice v. State,
 
 952 So.2d 129, 141(¶ 26) (Miss.2007).
 

 4. PREJUDICE TO THE DEFENDANT
 

 ¶ 22. In order to prevail on a motion to dismiss the charges against him for failure to provide a speedy trial, a defendant is not required to affirmatively show prejudice; however, “an absence of prejudice weighs against a finding of a violation” of constitutional rights.
 
 Murray v.
 
 
 *419
 

 State,
 
 967 So.2d 1222, 1232(¶30) (Miss.2007) (quoting
 
 Atterberry v. State,
 
 667 So.2d 622, 627 (Miss.1995)). Prejudice may arise from a denial of liberty or actual prejudice in defending against charges brought by the State, and of these two forms of prejudice, actual prejudice is given more weight.
 
 Id.
 
 In this case, both types of prejudice weigh against Johnson.
 

 ¶ 23. The reason Johnson was incarcerated while awaiting trial was because he illegally absented himself from the circuit court, thereby necessitating the instanter capias and his re-arrest. He has only himself to blame for his denial of freedom pending the actual trial.
 

 ¶ 24. In weighing actual prejudice, the
 
 Barker
 
 Court expressly cautioned courts to note the potential defense advantage of delay, stating:
 

 Delay is not an uncommon defense tactic. As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade. If the witnesses support the prosecution, its case will be weakened, sometimes seriously so. And it is the prosecution which carries the burden of proof. Thus, unlike the right to counsel or the right to be free from compelled self-inerimination, deprivation of the right to speedy trial does not
 
 per se
 
 prejudice the accused’s ability to defend himself.
 

 Barker,
 
 407 U.S. at 521, 92 S.Ct. 2182. In this case, the record shows that the passage of time allowed Johnson to alter his appearance, making Dandridge’s identification of him even more uncertain. Conversely, while Johnson claims that, but for the delay, he would have been able to call witnesses who were no longer willing to testify, he not only fails to state what this testimony may have been, he also fails to even name the purported witnesses. Therefore, we find that the record before us shows that the factor of prejudice must weigh against Johnson.
 

 ¶ 25. In viewing Johnson’s claim under the totality of the circumstances, Johnson’s claim that the charges against him should have been dismissed for a denial of a speedy trial, we cannot find plain error arising to a miscarriage of justice. To be sure, the delay was substantial. However, the record shows that had Johnson actually sought a speedy trial by bringing a motion to sever, the State was ready and willing to provide him with one as early as October 29, 2003. Moreover, the record also shows that Johnson’s denial of freedom arose from his own absence while on bond, and the State’s case was weakened by the passage of time. Therefore, manifest injustice and plain error cannot be shown. This issue is without merit.
 

 B. STATUTORY RIGHT TO A SPEEDY TRIAL
 

 ¶ 26. Mississippi Code Annotated section 99-17-1 requires trial to occur within 270 days from arraignment absent good cause for delay and a continuance granted. In this case, the record shows that Johnson was never arraigned. He was absent from the arraignment, and an instanter capias was issued. The date of September 15, 2003, was set for arraignment, but Johnson was not re-arrested until October 28, 2003. Therefore, the statutory clock never began to tick. This issue has no merit.
 

 II. INSUFFICIENT EVIDENCE
 

 ¶27. Johnson asserts pro se that because the only eyewitness to testify against him, aside from his alleged accomplice, could not identify him at trial, the circuit court erred in denying his motion for a directed verdict. • In considering whether the evidence is sufficient to sustain a conviction in the face of a motion for
 
 *420
 
 a directed verdict or for a judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows “beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.”
 
 Bush v. State,
 
 895 So.2d 836, 843(¶ 16) (Miss.2005) (quoting
 
 Carr v. State,
 
 208 So.2d 886, 889 (Miss.1968)).
 

 ¶28. Dandridge was the eyewitness who testified in this case. While the record does not disclose Dandridge’s age, it is clear that he was elderly and had a vision deficiency. Dandridge testified that when the robber entered the store, he identified himself as the nephew of the man who sold hamburgers and pork chops in the parking lot of Hack’s Produce. Dandridge testified that he recognized the robber as being the man he had seen “maybe twice previously)” with his uncle. However, at the time of the trial, Dandridge could not make an in-court identification of Johnson. This failure was due either to Dandridge’s age and eyesight or Johnson changing his appearance by changing from a natural to a braided hairstyle or a combination of both. However,, there is no dispute that Johnson is, in fact, the nephew of the man who sold hamburgers and pork chops in the parking lot of Hack’s Produce. Moreover, Dandridge’s identification of Johnson was supported by McIntosh’s testimony, which not only identified Johnson as the perpetrator, but also was factually consistent with Dandridge’s testimony in reciting the events of the armed robbery. Therefore, sufficient evidence existed for the jury to find that Johnson took two hundred and seventy dollars from Dandridge while threatening him with a pistol. This issue is without merit.
 

 III. IMPROPER PHOTOGRAPHIC IDENTIFICATION TESTIMONY
 

 ¶ 29. Johnson asserts that Chief Smith should not have been allowed to testify about a photographic-lineup identification from which Dandridge identified Johnson as the robber. However, this testimony was elicited by Johnson during cross-examination. A defendant may not argue that evidence was erroneously introduced when he himself was responsible for its introduction.
 
 Pruitt v. State,
 
 807 So.2d 1236, 1241(¶ 14) (Miss.2002).
 
 [3]
 
 Johnson also asserts that his counsel was not present when Dandridge identified his photograph. An accused does not have the right to counsel during a photographic lineup.
 
 Wilson v. State,
 
 574 So.2d 1324, 1326 (Miss.1990). There is no merit to this assignment of error.
 

 IY. IMPROPER AMENDMENT OF THE INDICTMENT
 

 ¶ 30. Johnson asserts that the State was impermissibly allowed to amend the indictment to reflect that the two hundred and seventy dollars taken from Dan-dridge’s wallet actually belonged to the owner of Hack’s Produce, rather than to Dandridge. The indictment originally alleged that the stolen money belonged to
 
 *421
 
 Dandridge, but at trial, Dandridge testified that the money actually belonged to his employer. An indictment may be amended at trial to conform to the evidence so long as the change is one of form and not substance and there is no prejudice to the defendant.
 
 Hampton v. State,
 
 815 So.2d 429, 431(¶ 7) (Miss.Ct.App.2002) (citing Miss.Code Ann. § 99-17-13 (Rev.2007)). No prejudice could have occurred to Johnson simply from correcting the statement of ownership of the money he took at gunpoint. There is no merit to this assignment of error.
 

 Y. IMPROPER CLOSING ARGUMENT
 

 ¶ 31. Johnson asserts that the State impermissibly urged the jury to reach a “compromise verdict” by finding him guilty, but not to affix a sentence of life imprisonment. Jury instruction number nine tracked the statutory language of Mississippi Code Annotated section 97-3-79 (Rev.2006) in requiring that if the jury chose to return a guilty verdict, the jury should either affix a penalty of life imprisonment or state that it was unable to do so. During closing arguments, the State argued it “was not asking the jury to sentence him to life.” Johnson did not object to this argument. Failure to make a contemporaneous objection to closing argument bars consideration of the issue on appeal.
 
 Rushing v. State,
 
 711 So.2d 450, 455(¶ 14) (Miss.1998). Moreover, assuming the issue were not barred, which we do not find, Johnson does not cite any authority for the proposition that the State should not urge a jury to affix a more lenient sentence than the maximum allowed by law.
 

 VI. INEFFECTIVE ASSISTANCE OF COUNSEL
 

 ¶ 32. In order to succeed on a claim of ineffective assistance of counsel, a defendant must overcome the familiar two-prong inquiry established in
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defendant must first demonstrate that his attorney’s “representation fell below an objective standard of reasonableness.”
 
 Hannah v. State,
 
 943 So.2d 20, 24(¶ 6) (Miss.2006) (citing
 
 Strickland,
 
 466 U.S. at 687-88, 104 S.Ct. 2052). If the defendant overcomes the first hurdle, “the defendant must show there is reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.”
 
 Id.
 
 (citing
 
 Strickland,
 
 466 U.S. at 694,104 S.Ct. 2052).
 

 ¶ 33. Johnson asserts that his counsel’s performance was deficient in not pursuing a speedy trial. We have found that the scant record fails to show error so plain that a miscarriage of justice appears, at least not on the face of what is before this Court. This Court has held:
 

 We should reach the merits on an ineffective assistance of counsel issue on direct appeal only if “(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.”
 

 Pittman v. State,
 
 836 So.2d 779, 787(¶ 39) (Miss.Ct.App.2002) (quoting
 
 Colenburg v. State,
 
 735 So.2d 1099, 1101(¶5) (Miss.Ct.App.1999)). There has been no such stipulation, and the record does not affirmatively show ineffectiveness of constitutional dimensions. Rather, the state of the record renders it impossible for us to sufficiently consider Johnson’s allegations.
 

 ¶ 34. Nevertheless, ineffective assistance of counsel claims are often raised in a petition for post-conviction collateral relief, where a defendant has an opportunity to expand upon the affidavits and other evidence unavailable at trial or in the record. Accordingly, we dismiss this issue
 
 *422
 
 without prejudice. Assuming he follows the requirements of the Mississippi Post-Conviction Collateral Relief Act, Johnson may raise his ineffective assistance of counsel claim in a post-conviction relief proceeding, if he so chooses.
 

 VII. CUMULATIVE ERROR
 

 ¶ 35. Johnson brings an omnibus assignment of cumulative error. Having found there was no error in previous assignments, this issue is without merit.
 

 ¶ 36. THE JUDGMENT OF THE CIRCUIT COURT OF SUNFLOWER COUNTY OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SUNFLOWER COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ, CHANDLER, GRIFFIS, ISHEE AND CARLTON, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY. BARNES, J., CONCURS IN PART AND IN THE RESULT.
 

 [1]
 

 . The supreme court denied rehearing on August 7, 2008.
 

 [2]
 

 . It appears from the record that McIntosh and Johnson were both indicted in cause number 2003-0106-K for possession of narcotics found in the primer gray Buick when they were arrested on January 8, 2003.
 

 [3]
 

 . This opinion discusses Johnson's assertion of ineffective assistance of counsel in the last assignment of error, in which we find the paucity of the record makes this issue best left for possible post-conviction relief. However, Johnson also contends that his counsel's performance was defective in failing to delve into inconsistencies in Dandridge's identification of him. For the sake of clarity, we note that Johnson’s counsel fully developed inconsistencies in Dandridge's and Chief Smith's testimony. Counsel also elicited testimony suggesting that Chief Smith influenced Dan-dridge’s identification, although Chief Smith adamantly denied doing so. At any rate, this testimony was fully elicited and argued in closing arguments.