# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00737-COA

**D'ANZOR JACKSON A/K/A D'ANZOR FERNON JACKSON A/K/A D'ANZOR F. JACKSON**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                    **APPELLEE**

DATE OF JUDGMENT:                05/18/2017
TRIAL JUDGE:                     HON. LEE SORRELS COLEMAN
COURT FROM WHICH APPEALED:       LOWNDES COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          OFFICE OF STATE PUBLIC DEFENDER
                                 BY: BENJAMIN ALLEN SUBER
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: ALICIA MARIE AINSWORTH
DISTRICT ATTORNEY:               SCOTT WINSTON COLOM
NATURE OF THE CASE:              CRIMINAL - FELONY
DISPOSITION:                     AFFIRMED: 05/08/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE GRIFFIS, P.J., FAIR AND GREENLEE, JJ.

### FAIR, J., FOR THE COURT:

¶1. D'Anzor Jackson was convicted of burglary after a neighbor, Precious Harris, said he entered her apartment, exposed himself in front of her and her children, and made several bizarre statements that could be interpreted as sexual innuendos. While Harris was giving her statement to the police, she spotted Jackson and identified him as the perpetrator. After being forcibly restrained, Jackson claimed to be the second coming of Jesus Christ. Jackson was convicted of burglary, and, on appeal, he contends the verdict was not supported by sufficient evidence. We find no merit to this argument, and we affirm Jackson's conviction

and sentence.

**DISCUSSION**

¶2.     Harris testified that on May 10, 2015—Mother's Day—she was watching television in her apartment with her two young children. She heard the front door open, and when she got up to investigate, she encountered a man in her apartment she recognized as her neighbor. Though she did not know the man's name at the time, she later identified him as Jackson. Jackson asked for someone named "Ashley" or "Ash-something." Harris told Jackson that the person was not there, but Jackson walked past her and further into her apartment. She followed Jackson, as did her children, and she noticed that Jackson "had his penis hanging out." Harris told Jackson to leave, and he responded by grabbing her arm and pulling her toward him, saying "God sent me to give you a Mother's Day present." He then walked past Harris, looked at the children, and said "your kids are here for a reason; they [are] your angel[s]." Jackson then walked out of the apartment, telling Harris, "I will be back."

¶3.     Harris went to a neighbor's apartment and called the police. As she was giving a statement to an investigator outside, she saw Jackson approaching on foot. She identified him as the man who had entered her apartment, and the officers told Jackson to get on his knees. Jackson initially complied, but when an officer tried to handcuff him, Jackson rose. The officer tried to use a taser to subdue Jackson, but Jackson got away from it and "took off."

¶4.     The officers testified that Jackson approached them aggressively and, after being hit

2

with the taser, he "shook it off" and advanced while "rambling" and saying "distorted words," including "that he was Jesus Christ." Jackson fled after being hit with a taser a second time. He was pursued and eventually caught behind a nearby apartment complex. The officers opined that Jackson appeared to be under the influence of drugs.

¶5.     Jackson, for his part, testified in his own defense. He claimed that he and Harris were acquaintances, that he worked with the father of her children and had been a guest in her apartment several times before; but he denied that he had entered her apartment that evening. He said, instead, that he was heading to his mother's apartment next door when he was approached aggressively by police officers. Jackson did not realize he was suspected of a serious offense, and he explained that he may have said "Jesus Christ" in surprise or frustration while the officers demanded his name. The officers responded to his initial hesitation by shooting him with a taser. The officers continued tasing him after he submitted, which prompted Jackson to flee. Jackson said he may have been incoherent as a result of being repeatedly shocked, but he admitted he had also used marijuana earlier. He speculated that his marijuana may have been laced with some more potent drug or that someone may have "slipped something into his drink."

¶6.     Jackson was convicted of burglary on the theory that he broke into Harris's home "with the intent to commit the crime of assault within." On appeal, Jackson challenges the sufficiency of the evidence supporting his conviction. In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (abrogated on other grounds by *Little v. State*, 233 So. 3d 288 (Miss. 2017)). Where the facts and inferences "point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is to reverse and render. *Id*. However, if "reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense, the evidence will be deemed to have been sufficient." *Id*.

¶7. Jackson's only argument on appeal is that "[t]he mere testimony of one witness . . . which is in direct conflict with [Jackson's] testimony in multiple places, is insufficient" to prove the elements of burglary. This argument ignores clearly established precedent, as it has long been the rule in Mississippi that "a single witness's uncorroborated testimony is sufficient to support a conviction." *Cousar v. State*, 855 So. 2d 993, 998-99 (¶16) (Miss. 2003) (citing *Doby v. State*, 532 So. 2d 584, 591 (Miss. 1988)). It makes no difference that Jackson testified to the contrary, as "[t]he jury determines the weight and credibility to give witness testimony and other evidence." *Gillett v. State*, 56 So. 3d 469, 505 (¶102) (Miss. 2010).

¶8. Harris's testimony was legally sufficient evidence to support Jackson's conviction.

¶9. **AFFIRMED.**

4

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR. TINDELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**