# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-01197-COA

ADRIAN DONTE WILSON A/K/A ADRIAN WILSON A/K/A ADRIAN DEONTE WILSON A/K/A ADRIAN DONTE' WILSON

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 07/18/2017 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF ADRIAN DONTE WILSON (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | ALEXANDER C. MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/11/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., CARLTON AND FAIR, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1.     A Copiah County jury found Adrian Donte Wilson guilty of two counts of burglary of a building. Wilson was sentenced as a nonviolent habitual offender to serve two consecutive seven-year terms in the custody of the Mississippi Department of Corrections. Wilson appeals. Finding Wilson's arguments to be without merit and that there are no other arguable issues in the record, we affirm Wilson's convictions and sentences.[1]

_____

[1] As detailed below, Wilson's appointed counsel filed a brief pursuant to the procedure established in *Lindsey v. State*, 939 So. 2d 743, 748 (¶18) (Miss. 2005),

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2. An individual came onto the premises of the Coleman Hill Hunting Club on May 25, 2015, and broke into the separate camp houses of four club members: Pat Patrick, Chad Hutchison, Greg Lee, and Lindy Lingo. Approximately a year later, Wilson was indicted on four counts of burglary of a building in violation of Mississippi Code Annotated section 97-17-33 (Rev. 2014). The indictment charged that Wilson broke into and entered the four separate camp houses with the intent to "feloniously to take, steal, and carry away goods and chattels of value." The indictment also charged that Wilson qualified for enhanced sentencing as a nonviolent habitual offender.

¶3. Wilson was tried before a jury in the Copiah County Circuit Court on July 18, 2017.[2] Three of the four club members testified at trial.[3] Patrick testified that he went to the camp on May 28, 2015, and he found that someone had entered his camp house and went through it "looking for stuff." Patrick further testified that he had set up a trail camera and pointed it at the door of his camp house. Photographs stored on the trail camera's SIM card were admitted as exhibits S-2 through S-7.[4]

¶4. Patrick then testified that he saw that other camp houses had been entered, so he called

---

representing in that brief that he did not believe his client's case presented any arguable issues on appeal. Wilson filed a supplemental pro se brief raising eight issues on appeal.

[2] Continuances granted prior to Wilson's trial will be addressed below in connection with Wilson's assertion that his rights to a speedy trial were violated.

[3] The other camp-house owner, Hutchison, did not testify.

[4] Details regarding defense counsel's objections to the photographs will be discussed below.

the sheriff's office and the other club members. Patrick and members of the sheriff's office walked around the camp houses, and the officers took photographs.

¶5. Lee, the State's second witness, testified that he went to the camp the same day that Patrick called him. He testified that he someone had gone through his camp house and taken a shop vac and a window unit air conditioner. Photographs of the inside of Lee's camp house were admitted into evidence without objection as exhibits S-9 through S-11.

¶6. Next, the State called Lingo. He testified that he had locked his camp house the last time he was there. When he checked it after Patrick's call, he found that his door had been pried open and two TVs, an air compressor, a skill saw, and his air conditioner were missing. Photographs of Lingo's damaged door were admitted into evidence without objection as exhibits S-12 and S-13. Photographs of the interior of Lingo's camp house, showing where the missing items had been, were admitted without objection as the State's exhibits S-14 through S-17. One of the missing TVs was a Vizio. Lingo was shown a photograph of a Vizio TV labeled with the model number, a bar code, and the following information: "06-16-2016 Fortenberry Lindshey D . . . ." Lingo identified the TV as one of the two that had been taken from his camp house. That photograph was admitted into evidence without objection as exhibit S-20.

¶7. Lingo was also shown a photograph of a trash can that contained a plastic tip from a cigar. Lingo confirmed that the photograph accurately showed the bathroom trash can from his camp house when he checked it after the break-in. Lingo further testified that the cigar tip was not his. He testified that no one smokes in his camp house and he always takes the

3

trash out before he leaves. Two photographs of the trash can with the plastic tip in it were admitted into evidence without objections as exhibits S-18 and S-19.

¶8. All three witnesses, Patrick, Lee, and Lingo, testified that they had not given anyone permission to enter or to take anything from their camp houses.

¶9. The State then called Lynshay[5] Fortenberry who identified Wilson in exhibit S-5 (a trail camera photo of Wilson exiting Patrick's camp house) and testified that she bought the Vizio TV depicted in S-20 from Wilson. She further testified that she pawned the TV a week after she bought it. She was contacted by the Copiah County Sheriff's Department and informed that the TV had been reported stolen.

¶10. Jeremy Thornton was the State's next witness. At the time of the break-ins, he was employed as an investigator with the Copiah County Sheriff's Department, and was one of the investigators on this case. He visited the camp a few days after the break-ins and took photographs. He testified that a deputy had visited the camp on May 28, 2015, and collected the SIM card from Patrick's trail camera. Investigator Thornton also testified that the SIM card was placed in an evidence bag, taken to the sheriff's department, and that he then downloaded some of the photographs that were on the SIM card and stored copies on a CD. The CD was introduced into evidence without objection as exhibit S-21. The photographs were displayed to the jury.

¶11. Investigator Thornton also testified that on June 3, 2015, Investigator Milton Twiner collected the plastic cigar tip that was found in Lingo's trash can. The cigar tip was taken

_____

[5] "Lynshay" Fortenberry is the same person as "Lindshey" Fortenberry (the name on the label on Lingo's missing Vizio TV).

4

to the Mississippi Crime Lab. Investigator Twiner did not testify because he was on medical leave.

¶12. The State's next witness was Barbara Hurrod. She identified exhibit S-22, two photographs of Wilson that showed a tattoo on his right shoulder and another tattoo on his left arm. She testified that she took the photographs when "she was booking [Wilson] in." Exhibit S-22 was admitted into evidence without objection.

¶13. Janet Burchfield was the State's final witness. She was qualified and accepted as an expert witness in forensic biology specializing in serology and DNA. Burchfield was shown "Mississippi Crime Laboratory submission 1" and identified it as a sealed bag containing the plastic cigar tip. She testified that she compared a known DNA sample[6] from Wilson to DNA recovered from the plastic cigar tip. Burchfield explained that DNA is unique to every individual with the exception of identical twins. She opined that the DNA recovered from the cigar tip matched the DNA from Wilson's known sample.

¶14. At the close of the State's case, the defense moved for a directed verdict on all counts. The trial court granted a directed verdict on Count II, burglary of Hutchison's camp house, as Hutchison did not testify at trial. The trial court denied the motion on the other three counts. Wilson did not testify, and the defense called no witnesses. At the close of evidence, defense counsel unsuccessfully renewed the motion for a directed verdict.

¶15. The jury returned guilty verdicts on Count I, burglary of Patrick's camp house, and

---

[6] Burchfield explained that a "known sample is either a blood sample or a saliva sample from inside [the] cheek [of] an individual."

5

Count IV, burglary of Lingo's camp house.[7] The trial court conducted a separate sentencing hearing and found that Wilson qualified for enhanced sentencing as a nonviolent habitual offender. Wilson was sentenced to serve seven years without parole on Count I and seven years without parole on Count IV, to be served consecutively to the sentence in Count I. Wilson appealed.

## STANDARD OF REVIEW

¶16.    In *Lindsey v. State*, 939 So. 2d 743, 748 (¶18) (Miss. 2005), the Mississippi Supreme Court established a procedure "to govern cases where appellate counsel represents an indigent criminal defendant and does not believe his or her client's case presents any arguable issues on appeal." *Thomas v. State*, 247 So. 3d 1252, 1256 (¶9) (Miss. 2018) (internal quotation mark omitted). In particular, *Lindsey* requires:

> (1) Counsel must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(1)-(5), (8);
>
> (2) As a part of the brief filed in compliance with Rule 28, counsel must certify that there are no arguable issues supporting the client's appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding arrest; (b) any possible violations of the client's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.
>
> (3) Counsel must then send a copy of the appellate brief to the defendant, inform the client that counsel could find no arguable issues in the record, and advise the client of his or her right to file a pro se brief.
>
> (4) Should the defendant then raise any arguable issue or should the appellate court discover any arguable issue in its review of the record, the court must,

---

[7] The jury found Wilson not guilty on Count III, burglary of Lee's camp house.

if circumstances warrant, require appellate counsel to submit supplemental briefing on the issue, regardless of the probability of the defendant's success on appeal.

(5) Once briefing is complete, the appellate court must consider the case on its merits and render a decision.

*Thomas*, 246 So. 3d at 927 (¶12).

¶17. Upon review, we find that Wilson's appellate counsel fully complied with *Lindsey.*

¶18. Wilson has filed a pro se supplemental brief. He claims: (1) the trial court erred in denying his motion to dismiss Count I; (2) the trial court erred when it admitted photographs of the crime scene that were taken in 2017; (3) the trial court violated his rights to a speedy trial; (4) the trial court erred when it denied his motion in limine to exclude inmate intake photographs of him; (5) the trial court erred when it denied his motion for a new trial; (6) the trial court erred when it denied his motion for a judgment notwithstanding the verdict (JNOV); (7) Wilson's trial counsel, the prosecutor, and the trial court judge conspired to deprive him of his due process rights; and (8) the State struck potential jurors based upon their race. We address each of these arguments below.[8]

## DISCUSSION

¶19. The burglary statute at issue in this case is section 97-17-33. This statute provides, in relevant part:

(1) Every person who shall be convicted of breaking and entering, in the day or night, any shop, store, booth, tent, warehouse, or other building or private

---

[8] For discussion purposes, we combine Wilson's two separate assignments of error relating to the admissibility of certain photographs, namely, issue two—the crime scene photographs taken in 2017, and issue four—the two inmate intake photographs taken of Wilson.

room or office therein, . . . or trailer in which any goods, merchandise, equipment or valuable thing shall be kept for use . . . with intent to steal therein, or to commit any felony, . . . shall be guilty of burglary, and imprisoned in the penitentiary not more than seven (7) years.

Thus, the two elements the State was required to prove to support the Patrick and Lingo burglary convictions are that Wilson "broke and entered [their camp houses] . . . with intent to steal or commit a felony." *Genry v. State*, 767 So. 2d 302, 309 (¶21) (Miss. Ct. App. 2000).

## I. The Motion to Dismiss Count I

¶20. Wilson asserts that the trial court erred in denying his motion to dismiss Count I, which charged Wilson with burglary of Patrick's camp house.[9] Wilson's sole basis for this assertion is that there was insufficient evidence to support a burglary charge against him relating to Patrick's camp house because the State offered no physical evidence to support Patrick's statement that "someone [had] been going through his stuff."[10]

¶21. We reject Wilson's first assignment of error on procedural grounds because he waived

---

[9] Count I of the indictment charged, in relevant part:

[Adrian Donte Wilson] did wilfully, unlawfully, feloniously and burglariously break and enter that certain building owned by Coleman Hill Hunting Club and used and occupied by Pat Patrick, with the unlawful, felonious and burglarious intent of him, the said Adrian Donte Wilson, then and there wilfully, unlawfully and feloniously to take, steal and carry away the goods and chattels, of value, of the said Pat Patrick, then and there being kept in said building for use, sale, deposit or transportation, contrary to and in violation of [s]ection 97-17-33. . . .

[10] In his motion to dismiss Count I, Wilson's sole assertion was that dismissal was required because "discovery shows as to Count 1 of the indictment that there were no items missing from [Patrick's] building."

8

this issue for appeal. We find nothing in the record that indicates that the trial court entered an order on Wilson's motion to dismiss Count I. A party must seek a ruling on an objection or motion. The failure to bring a motion to the attention of the trial court and request a hearing waives the issue for appeal. *Craft v. State*, 832 So. 2d 467, 471 (¶10) (Miss. 2002); *Reed v. State*, 31 So. 3d 48, 57 (¶36) (Miss. Ct. App. 2009).

¶22. We also find that Wilson's claim lacks merit because a pretrial motion to dismiss an indictment, or any count of an indictment, is not a permissible means to challenge the sufficiency of the evidence, as Wilson does here. *State v. Parkman*, 106 So. 3d 378, 380-81 (¶¶6-8) (Miss. Ct. App. 2012). As we explained in that case:

> Based on the historical role of the grand jury as an independent accusatory body, courts have shown great reluctance to allow pretrial challenges to evidentiary support for an indictment. "An indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." *Costello v. United States*, 350 U.S. 359, 363 (1956).

*Parkman*, 106 So. 3d at 380 (¶6). The defendant in *Parkman* "did not contend count three of his indictment failed to charge a cognizable [crime]. Instead, he challenged the sufficiency of the State's evidence supporting [that] count." *Id.* at (¶7). Similarly, Wilson does not assert that the elements of burglary were not charged in Count I; rather, he asserts that insufficient evidence to support Count I was presented to the grand jury. As we explained in *Parkman* under the same circumstances, pretrial dismissal is not the proper remedy. *Id.* at 380-81 (¶¶6-8). Instead, "the appropriate time to test the sufficiency of evidence for an indictment, or any count in an indictment, is during trial on the merits after the State has presented its case—not before trial." *Id.* Continuing, we held: "[O]ur

9

precedent is clear that a trial judge has no discretion to dismiss an indictment, nor any of its counts, prior to trial, where a defendant's sole claim is a lack of evidentiary support." *Id.* at 381 (¶8). Based on this precedent, we find that Wilson's first assignment of error is without merit.

## II. Admission of (1) Photographs of the Crime Scene Taken in 2017; and (2) Inmate Intake Photographs of Wilson

¶23. In his pro se supplemental brief, Wilson raised two separate assignments of error relating to the admissibility of certain photographs. To streamline our discussion of these issues, we combine them under this heading.

### A. Photographs of the Crime Scene Taken in 2017

¶24. Wilson asserts that the trial court erred in allowing into evidence photographs of the hunting camp, the victims' camp houses, and a photograph of Lingo's Vizio TV. In particular, Wilson complains about the following photographs: S-1 (the hunting camp sign); S-8 (the front of Lingo's camp); S-9 through S-11 (Lee's camp); S-12 and S-13 (the door to Lingo's camp house); S-14 (the box that Lingo's missing Vizio TV came in); S-15 through S-17 (the inside of Lingo's camp house showing where the two missing TVs and the air conditioning unit had been mounted); S-18 and S-19 (the bathroom trash can in Lingo's camp house containing the plastic cigar tip); and S-20 (the back of Lingo's Vizio TV labeled with the model number and "06-16-2016 Fortenberry Lindshey D"). Wilson asserts that because these photographs were taken in 2017, and the burglaries occurred in 2015, this time delay made the photographs more prejudicial than probative. From this, Wilson asserts that

10

the photographs should have been excluded under Mississippi Rule of Evidence 403.[11]  We find no merit in Wilson's assertions for the reasons addressed below.

¶25.    We find that this assignment of error is procedurally barred because (1) exhibits S-9 through S-20 were admitted into evidence without objection from Wilson's counsel; and (2) the objections made by defense counsel as to exhibits S-1 and S-8 were not on the same grounds that Wilson raises here—that the time delay between the burglaries and when the photographs were taken was prejudicial.[12]  Accordingly, Wilson's assignment of error as to these photographs is waived.  In *Beasley v. State*, 136 So. 3d 393, 399 (¶19) (Miss. 2014), for example, the Mississippi Supreme Court held that the defense counsel's failure to object to the admission of the State's photographs waived the admissibility issue on appeal.  "This Court has repeatedly held that if no contemporaneous objection is made, the error, if any, is waived."  *Id.* (internal quotation marks omitted).  And in *Brown v. State*, 854 So. 2d 1081, 1085 (¶13) (Miss. Ct. App. 2003) this Court held that "[w]hen a defendant does not object on the same grounds being raised in an argument on appeal, the issue is waived."

¶26.    Procedural bar notwithstanding, we also find no error in the admission of these

---

[11] Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

[12] Wilson's counsel objected to S-1 (the hunting camp sign) as irrelevant; and S-8 (a photograph of the front of Lindy's camp house) because the photograph was not taken by the witness authenticating it.  As the trial court explained to Wilson's counsel as to that objection, this is not a requirement for authenticating a photograph.  *See, e.g.*, *Estate of Luster ex rel. Gusman v. Mardi Gras Casino Corp.*, 121 So. 3d 962, 966 (¶12) (Miss. Ct. App. 2013) ("[T]he actual photographer need not testify regarding the photos . . . .").

11

photographs at trial. Ordinarily, we employ an abuse of discretion standard when reviewing issues concerning whether the trial court erred in admitting or excluding photographs at trial. *Baldwin v. State*, 784 So. 2d 148, 158 (¶34) (Miss. 2001). In this case, however, because defense counsel did not make a contemporaneous objection to the subject photographs at trial, or did not object to the photographs on the same grounds as Wilson raises here, Wilson must rely on plain error to challenge the admissibility of these photographs on appeal. *Beasley*, 136 So. 3d at 399 (¶20).

¶27. "The plain-error doctrine is implicated when an error occurs at trial which affects substantial rights and results in a manifest miscarriage of justice." *Beasley*, 136 So. 3d at 399-400 (¶20) (internal quotation mark omitted). "Further, the Court applies the plain error rule only when it affects a defendant's substantive/fundamental rights. The plain error doctrine has been construed to include anything that seriously affects the fairness, integrity[,] or public reputation of judicial proceedings." *Smith v. State*, 984 So. 2d 295, 301 (¶14) (Miss. Ct. App. 2007) (citation and internal quotation marks omitted). We find that Wilson has failed to show that it was plain error for the trial court to allow the subject photographs into evidence in this case.

¶28. The photographs were relevant, probative evidence because they illustrated the "breaking and entering" element of the burglary charges against Wilson, and they supplemented and clarified the witnesses' testimony. As the Mississippi Supreme Court held in *Beasley*, even an inflammatory photograph "may be admitted so long as it has probative value and its introduction serves a meaningful evidentiary purpose. A photograph has a

12

meaningful evidentiary purpose when it aids in describing the circumstances of the [crime] . . . or supplements or clarifies witness testimony." *Beasley*, 136 So. 3d at 400 (¶21) (internal quotation marks omitted); *see also Baldwin*, 784 So. 2d at 158 (¶35).

¶29.    We further find that even if the defense had objected to the photographs of the camp houses as inaccurately representing the crime scene,[13] we would find no abuse of discretion if the trial court had overruled such an objection, and we do not find that admitting these fully-authenticated photographs violated Wilson's right to a fair trial in any way.  In *Gulf, Mobile and Ohio Railroad Company v. Golden*, 221 Miss. 253, 263, 72 So. 2d 446, 450 (1954), the Mississippi Supreme Court held that "[t]he mere fact that a photograph was taken at a time different from that in question does not render it inadmissible if the witness is able to verify it as a substantial representation of the conditions as they existed at the time in question."  We find that this principle applies here.  The camp photographs were authenticated as accurately depicting the conditions at the time in question, and Wilson offered no evidence at trial, or argument in his appellant's brief, contradicting the witnesses' testimony on this point.  *See id.  Cf. Givens v. State*, 618 So. 2d 1313, 1317 (Miss. 1993) (upholding trial court's exclusion of photographs where witness testimony conclusively showed that the conditions depicted by the photographs were substantially different from the

---

[13] To be clear, we observe that Wilson's "time-delay" argument does not even apply to some of the photographs he lists in this assignment of error.  S-1 is simply a photograph of the hunting camp sign, it was not part of any crime scene.  S-14 (the box that Lingo's missing Vizio TV came in) was simply admitted to show the missing TV was a Vizio.  S-20 (the back of Lingo's Vizio TV labeled with the model number and "06-16-2016 Fortenberry Lindshey D") was not a part of the crime scene, but rather was a photograph of Lingo's TV after it was recovered by the police from the pawn shop.

conditions on the night in question). In short, we find this assignment of error is both procedurally barred and without merit, as Wilson has not shown that it was plain error for the trial court to admit the photographs of the victims' camp houses and photographs of Lingo's Vizio TV that Fortenberry pawned and that the authorities later recovered.

## B.     Wilson's Inmate Intake Photographs

¶30.    Wilson also claims that the trial court erred when it overruled his motion in limine to exclude two photographs of him taken when he was being booked into jail on another arrest. The photographs showed tattoos on Wilson's right shoulder and left arm. These two photographs were admitted into evidence without objection as exhibit S-22. Wilson asserts that these two photographs were more prejudicial than probative because they were of an arrest for a different crime, and had no purpose other than to mislead and confuse the jury. We find no error in the admission of the two inmate intake photographs.

¶31.    First, although Wilson claims the trial court erred when it "overruled" his motion in limine seeking to exclude these photographs, the record contains no order on this motion in limine, or any other indication that the trial court made a ruling on this motion. This issue is therefore waived on appeal. *Rushing v. State*, 711 So. 2d 450, 456 (¶17) (Miss. 1998) ("It is well-established that it is the responsibility of the movant to obtain a ruling from the court on motions filed by him and [the] failure to do so constitutes a waiver of same.") (internal quotation mark omitted). Further, when these photographs were admitted into evidence, defense counsel did not object. For this additional reason, Wilson is procedurally barred from raising this issue on appeal. *Beasley*, 136 So. 3d at 399 (¶19); *see Holly v. State*, 671

14

So. 2d 32, 36-37 (Miss. 1996) (Defendant's claim that the trial court erred in admitting evidence was procedurally barred where the defendant did not pursue a ruling on his motion in limine and did not raise a contemporaneous objection to admission of the evidence at trial.).

¶32.    Second, notwithstanding these procedural bars, we find no plain error in the trial court admitting the two inmate intake photographs at trial.  As noted, the two photographs of Wilson at issue show a tattoo of Wilson's right shoulder, and a tattoo on Wilson's left arm. Hurrod identified Wilson as the person in the photographs.  The photographs were relevant and probative evidence identifying Wilson as the perpetrator of the burglaries.

¶33.    Specifically, the inmate intake photographs were compared to the photographs from Patrick's trail camera.  The photographs were displayed to the jury, and the prosecutor was able to enhance the photographs to allow the jurors a closer view of the shoulders and arms of the person caught on the deer camera.  These photographs showed tattoos on the same parts of that person's body as those shown in the inmate intake photographs of Wilson.  We find that the inmate intake photographs served a "meaningful evidentiary purpose" because they aided in describing the circumstances of the burglary (i.e., identification of the perpetrator) when compared to the person in the deer camera photographs. *See Beasley*, 136 So. 3d at 400 (¶21).

¶34.    Wilson asserts that the photographs were prejudicial because they related to another crime.  Wilson also asserts that Hurrod's statement at trial, "I know him from booking him in," which she made when she was identifying Wilson in the photographs, was prejudicial.

15

The jury knew that Wilson faced four burglary charges. There was no indication in the inmate intake photographs, or Hurrod's testimony, that Wilson was being booked for an earlier crime. Under these circumstances, and in light of the probative value of the inmate intake photographs with respect to identifying Wilson, we find that neither the photographs nor Hurrod's testimony, deprived Wilson of a fair trial or that admission of the photographs and this statement constituted "a manifest miscarriage of justice." Accordingly, we find that Wilson's assignment of error on this issue is without merit.

### III. Speedy Trial

¶35. Wilson claims he was denied his statutory[14] and constitutional rights to a speedy trial due to continuances granted by the trial court.

¶36. Wilson's trial took place 411 days from his indictment and 308 days from when he waived arraignment.

> Review of a speedy trial claim encompasses the fact question of whether the trial delay rose from good cause. Under this Court's standard of review, this Court will uphold a decision based on substantial, credible evidence. If no probative evidence supports the trial court's finding of good cause, this Court will ordinarily reverse. The [S]tate bears the burden of proving good cause for a speedy trial delay, and thus bears the risk of non-persuasion.

---

[14] On appeal, Wilson does not clearly articulate an argument relating to his statutory right to a speedy trial under Mississippi Code Annotated section 99-17-1 (Rev. 2015). Nevertheless, we address both his constitutional and statutory rights to a speedy trial in an abundance of caution, as Wilson did attempt to raise his statutory right to a speedy trial in a pro se motion to dismiss filed in the trial court. In that motion, Wilson objected to the July 18, 2017 trial date set by the trial court's March 23, 2017 order granting the State's request for a continuance. Specifically, Wilson argued that "under Mississippi law" the State was required to present its case to a "grand jury" within 270 days from when he waived arraignment on September 13, 2017, and that this time would have elapsed by his July 18, 2017 trial date.

16

*DeLoach v. State*, 722 So. 2d 512, 516 (¶12) (Miss. 1998) (citations omitted). The relevant

procedural history on Wilson's speedy-trial assignment of error is as follows:

| Event | Date |
|---|---|
| Camp houses at Coleman Hill Hunting Club are broken into | May 25, 2015 |
| Wilson's indictment | June 2, 2016 |
| Wilson's arrest | August 26, 2016 |
| Wilson's waiver of arraignment | September 13, 2016 |
| Agreed trial continuance granted setting trial date for March 9, 2017 | November 16, 2016 |
| Defense counsel Renee Berry moves to withdraw due to conflict with Wilson | November 28, 2016 |
| Order entered granting Berry's motion to withdraw and substituting M.A. Bass | November 28, 2016 |
| M.A. Bass moves to withdraw due to conflict with Wilson | December 12, 2016 |
| Order entered granting Bass's motion to withdraw and substituting Lequisha Stevenson | December 16, 2016 |
| Continuance order entered setting trial for July 18, 2017 | March 23, 2017 |
| Wilson's pro se motion to dismiss based upon trial delays | April 5, 2017 |
| Order substituting Price Henley as defense counsel due to Stevenson's death | April 5, 2017 |
| Order entered denying Wilson's motion to dismiss due to trial delays | May 24, 2017 |
| Wilson's trial | July 18, 2017 |

## A. The Statutory Speedy-Trial Violation Claim[15]

¶37. Mississippi Code Annotated section 99-17-1 (Rev. 2015) provides: "Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned."

¶38. To begin, we observe that Wilson moved to dismiss his case based upon alleged violations of his right to a speedy trial; he did not move to enforce his rights to a speedy trial. The record does not contain any motion by Wilson or his counsel demanding a speedy trial. In *McBride v. State*, 61 So. 3d 138, 144 (¶21) (Miss. 2011), the Mississippi Supreme Court recognized that "a demand for dismissal due to a speedy-trial violation is *not* the equivalent of a demand for a speedy trial." *See also Guice v. State*, 952 So. 2d 129, 141 (¶26) (Miss. 2007). As such, Wilson did not technically assert any right to a speedy trial at all.

¶39. In both *McBride*, 61 So. 3d at 148 (¶37), and *Guice*, 952 So. 2d at 141-142 (¶¶26-29), however, the supreme court also recognized that regardless of the relief sought in defendants' motions to dismiss, the defendants had also waived their statutory right to a speedy trial by failing to raise any objection at all within 270 days of their arraignment. *See also Collins v. State*, 232 So. 3d 739, 744 (¶16) (Miss. Ct. App. 2017). In this case, although Wilson did so in a motion to dismiss, he did raise an objection to his trial delays within the 270 day time-frame. He filed his motion to dismiss on April 5, 2017, 204 days from September 13, 2016,

---

[15] A defendant's constitutional right to a speedy trial "exists separately from the statutory right to a speedy trial." *Williford v. State*, 820 So. 2d 13, 17 (¶8) (Miss. Ct. App. 2002).

the date he waived arraignment. Accordingly, we address Wilson's statutory speedy-trial violation argument on the merits.

¶40. In denying Wilson's motion, the trial court held that "[a]lthough Defendant is set to be tried 308 days after his arraignment, good cause was shown for the delay, and, thus, he is set to be tried within the time fixed by applicable statute." The trial court detailed its calculations regarding the actual days counted between Wilson's waiver of his arraignment and the July 18, 2017 trial date, as follows:

> The total number of days between [Wilson's] arraignment (09-13-16) and his third trial date (07-18-17) is 308 days. The 270 days began to run on the date of [Wilson's] arraignment and the count reached 65 days until tolled at the entry of an Order granting continuance on November 16, 2016. And a second trial date was set for March 9, 2017. Since the motion for continuance was joined by Wilson, the running of the time period for those 114 days is tolled, and correspondingly, this time is subtracted from the total amount of the delay. On March 23, 2017, the Court granted a continuance on the State's motion and set a third trial date of July 18, 2017.

¶41. Regarding the continuance requested by the State and granted on March 23, 2017, the trial court detailed its good-cause determination:

> The trial court [finds] that there was good cause for delay based upon the unavailability of one of the State's key witnesses due to a medical restriction from her physician which did not allow her to return to work due to a high risk pregnancy. Therefore, this 132 day delay cannot be charged against the State. Even if this last delay was attributable to the State, [Wilson] will still be tried within the 270 days. Thus, the Court finds that [Wilson's] statutory right to a speedy trial has not been violated.

¶42. Based upon our review of the record and the applicable precedent, we find that there was "substantial, credible evidence" supporting the trial court's determination that the trial delay rose from good cause and that Wilson's statutory right to a speedy trial was not

19

violated. As to the first continuance, granted November 16, 2016, the trial court did not charge this delay against the State because Wilson's counsel agreed to it. *See Ames v. State*, 191 So. 3d 746, 754 (¶37) (Miss. Ct. App. 2015) ("When a motion for a continuance is joined by the defendant . . . [t]his continuance cannot be attributed to the State."). This continuance order also provides that Wilson waived "all speedy trial issues," as follows: "The Defendant, by and through [his] counsel, having no objection to this continuance and hereby waiving all speedy trial issues, this Court does hereby find that the State's Motion for Continuance should be granted."

¶43. Wilson contends that his lawyer agreed to the first continuance without his consent. Nevertheless, even if the first 191 days are counted (the time between Wilson's waiver of arraignment and the second continuance granted to the State on March 23, 2017), the 270-day rule was not violated because the second continuance was for good cause—namely, the unavailability of a key witness. *See Jackson v. State*, 924 So. 2d 531, 544-45 (¶¶47, 50) (Miss. Ct. App. 2005) (Unavailability of an essential witness for the State constitutes good cause for allowing a continuance.); *see also Johnson v. State*, 9 So. 3d 413, 417-18 (¶¶15, 20) (Miss. Ct. App. 2008) (finding that the State's inability to locate an essential witness after diligent search was good cause for continuance). Thus, the remaining 117 days between this continuance and Wilson's July 18, 2017, trial date do not count towards the 270-rule under section 99-17-1. As the Mississippi Supreme Court has consistently held, where good cause exists for allowing a continuance, that time must be "deducted from the statutory time calculation" between the defendant's arraignment and the date he was tried. *Perry v. State*,

233 So. 3d 750, 760 (¶24) (Miss. 2017); *Sharp v. State*, 786 So. 2d 372, 378 (¶5) (Miss. 2001) (Recognizing that each delay must be considered separately, "because only those delays attributable to the State count toward the 270 days."). In *Perry v. State*, the supreme court held that "[a]fter the deduction [for continuances granted for good cause], 198 days remained between [defendant's] arraignment and his trial. There was no statutory speedy-trial violation."[16] 233 So. 3d at 760 (¶24). We likewise find no statutory speedy-trial violation here because, even if the first agreed continuance is taken into account against the 270-day rule, there were only 191 countable days between the date Wilson waived arraignment and his trial date.

## B. The Constitutional Speedy-Trial Violation Claim

¶44. Compliance with section 99-17-1, however, does not mean that Wilson's constitutional right to a speedy trial has been respected. *Jackson*, 924 So. 2d at 544 (¶45). In his appeal, Wilson asserts that his constitutional right to a speedy trial was violated due to the continuances granted by the trial court.[17] Wilson was indicted on June 2, 2016, which

---

[16] We acknowledge that in cases in which a defendant can show that he was tried more than 270 days after his arraignment, the appellate courts must also assess whether the defendant has shown that he sustained actual prejudice in determining whether there has been a statutory speedy-trial violation. *McBride*, 61 So. 3d at 147 (¶35). The supreme court's decision in *Perry*, 233 So. 3d at 759-60 (¶¶23-24), shows that where the defendant cannot show he was tried more than 270 countable days after his arraignment, this, alone, supports a determination that there has been no statutory speedy-trial violation.

[17] "A criminal defendant is guaranteed 'the right to a speedy and public trial' by the Sixth Amendment to the United States Constitution. U.S. Const. amend. VI; U.S. Const. amend. XIV. Additionally, the Mississippi Constitution guarantees the defendant 'a speedy and public trial by an impartial jury of the county where the offense was committed.' Miss. Const. art 3, § 26." *Perry*, 233 So. 3d at 755 (¶8).

triggers his constitutional right to a speedy trial in this case. *Havard v. State*, 94 So. 3d 229, 237 (¶21) (Miss. 2012).[18] 41 days elapsed between Wilson's indictment and his July 18, 2017 trial. In general, an appellate court applies the four-part balancing test from *Barker v. Wingo*, 407 U.S. 514 (1972) when addressing constitutional speedy-trial claims. *Perry*, 233 So. 3d at 755-56 (¶8). "That test requires balancing four factors to determine whether the right to a speedy trial was violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the speedy-trial right; and (4) prejudice to the defendant." *Id*.

¶45. At trial, however, Wilson only raised the issue of his statutory right to a speedy trial.[19] Under these circumstances, the Mississippi Supreme Court has held that "the Court will not hold a trial court in error for issues not presented to it for consideration." *Flynt v. State*, 183 So. 3d 1, 14 (¶41) (Miss. 2015). Rather, where a defendant wholly fails to raise a constitutional speedy-trial claim before the trial court, this Court and the Mississippi Supreme Court apply a "plain error" analysis, which places the burden on Wilson to establish "a plain-error basis to justify appellate review." *Havard*, 94 So. 3d at 237 (¶22). As we have addressed above, "'[f]or the plain-error doctrine to apply, there must have been an error that

---

[18] "[T]he United States Supreme Court has stated that a formal indictment or information or an arrest—which ever occurs first—triggers the constitutional right to a speedy trial." *Havard*, 94 So. 3d at 237 (¶21).

[19] As noted, Wilson's motion to dismiss due to trial delays filed in the trial court only referenced a 270-day requirement from date of arraignment to trial (i.e., the section 99-17-1 270-day rule). Further, Wilson's motion had no citations or references to any constitutional provision securing his right to a speedy trial, and Wilson made no constitutionally-based arguments in his motion.

resulted in a manifest miscarriage of justice or seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Humbles v. State*, 228 So. 3d 838, 843 (¶19) (Miss. Ct. App. 2017) (quoting *Johnson v. State*, 155 So. 3d 733, 738 (¶8) (Miss. 2014)). We find no such error under the circumstances here.

¶46.    As noted, Wilson asserts that his first lawyer did not obtain his consent to agree to the first continuance granted in this case, or to waiver of his speedy-trial rights.  From this, Wilson makes the broad assertion that his first attorney, the prosecuting attorney, and the trial judge all "conspired to deprive and fraudulently [deprive him] of his [speedy-trial] rights." Other than Wilson's own assertions, there is no evidence in the record of any such conspiracy.  Indeed, the trial court did not treat the first agreed continuance as a permanent waiver of Wilson's speedy-trial rights, but instead made a specific determination that the second continuance granted on the State's motion was supported by good cause.  As we held above, we find that the trial court's good-cause determination is supported by credible record evidence, and we further find no "plain error" in this determination.  *See Johnson*, 9 So. 3d at 417-18 (¶¶15, 20); *Jackson*, 924 So. 2d at 544-45 (¶¶47, 50).  The record also reflects that by the time of his trial, Wilson had been represented by four different lawyers. His first two lawyers were replaced on their own motions due to conflicts with Wilson, and Wilson's third lawyer passed away.  These circumstances had nothing to do with the State or the trial court.

¶47.    Wilson further avers that "[a]fter the unnecessary [trial] delays the State let the investigation grow stale, proffered perjured testimony, [and] used prejudic[ial] pictures to create prejudice and bias [in the] jury."  We recognize that "the inability of a defendant [to]

23

adequately . . . prepare his case skews the fairness of the entire system," *McBride*, 61 So. 3d at 145 (¶24), but in this case Wilson offers no specific examples supported in the record of the alleged conduct, or how any such alleged conduct prejudiced his lawyers from preparing his defense. Wilson's unsupported, general accusations are not enough to meet the "plain error" standard. As the Mississippi Supreme Court held in *Havard*, 94 So. 3d at 237 (¶22):

> Havard merely claims that his defense was prejudiced by the 600 days that elapsed between his arrest and trial, because "witnesses were lost" and his "defense to the charges [was] diminished by the delay," nothing more. This is not enough. We need more than just broad assertions made "out of the clear blue," that have no support in the record. [citation omitted]. Accordingly, we find that Havard has failed to show plain error on appeal, and we hold that his constitutional speedy-trial claim remains procedurally barred.

*See also Humbles*, 228 So. 3d at 843 (¶20) (Defendant's general assertion that "his defense was prejudiced by the 1,293 days that elapsed between his arrest and trial [because it] impair[ed] his ability to prepare an adequate defense of the charges he faced" was insufficient to show plain error on appeal.). In sum, we find that Wilson's constitutional speedy-trial violation assignment of error is without merit.

## IV. Weight of the Evidence

¶48. Wilson asserts that the trial court erred when it denied his motion for new trial because the verdict was against the overwhelming weight of the evidence. "When reviewing a challenge to the weight of the evidence, the Court will disturb a jury verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Jones v. State*, 154 So. 3d 872, 880 (¶24) (Miss. 2014) (internal quotation mark omitted). We review the evidence in the light most favorable

24

to the verdict, *Roberts v. State*, 229 So. 3d 1060, 1068 (¶29) (Miss. Ct. App. 2017), and review the trial court's denial of a motion for a new trial under an abuse-of-discretion standard. *Lafont v. State*, 9 So. 3d 1143, 1145 (¶6) (Miss. Ct. App. 2008).

¶49. Wilson asserts that the State did not prove he was the perpetrator of the burglaries because (1) Fortenberry was not given a lineup from which to identify the man who sold her the stolen Vizio television; and (2) the plastic cigar tip was "contaminated evidence" and did not prove he committed the burglaries. Wilson also contends that the State did not prove the "intent" element of his burglary conviction as to the Patrick camp house. Based on our review of the record, we find that the trial court did not abuse its discretion in denying Wilson's motion for a new trial.[20]

### A. Identification of Wilson as the Perpetrator

¶50. Our review of the record shows that the prosecution presented ample evidence identifying Wilson: Wilson's inmate intake photographs showing his tattoos on his right shoulder and left arm were comparable to the trail camera photographs of a person with tattoos in the same places entering and exiting Patrick's camp house. The jury also heard the testimony and saw the photographs regarding the plastic cigar tip, including the two photographs of the cigar tip in Lingo's bathroom trash can. Burchfield testified that she examined the plastic cigar tip and that the DNA found on its tip was consistent with the DNA from a sample taken from Wilson. Additionally, the jury heard Fortenberry identify Wilson

---

[20] As set forth above, the elements of burglary require that the jury find that Wilson "broke and entered [the Patrick and Lingo camp houses] . . . with intent to steal or commit a felony." *Genry*, 767 So. 2d at 309 (¶21); Miss. Code Ann. § 97-17-33. The jury was instructed on these elements.

in exhibit S-5 (a trail camera photo of Wilson exiting Patrick's camp house) and testify that she purchased the Vizio TV from Wilson and later pawned it to pay bills. The record also reflects that Wilson did not testify at trial and the defense presented no other witnesses.

¶51. We find no merit to Wilson's contention that Fortenberry had to identify Wilson in a photograph lineup. The record reflects that Fortenberry testified that she has known Wilson "for a long time," and that she purchased the Vizio TV from Wilson. There was no need for Fortenberry to view a lineup. The record also shows that Lingo testified that the Vizio TV (the TV Fortenberry bought from Wilson and later pawned) was the one stolen from his camp house.

¶52. We also find no merit to Wilson's contention that the plastic cigar tip was "contaminated" and did not prove that he was the perpetrator of the burglaries. Wilson offers no basis for this contention. Further, the evidence and testimony outlined above on this issue was admitted at trial without objection from defense counsel. This includes the photos of the plastic cigar tip, Lingo's authenticating testimony, Thornton and Burchfield's testimony regarding preservation of the evidence, and Burchfield's testimony that the DNA found on the plastic cigar tip was consistent with the DNA from a sample taken from Wilson. "It is the jury's role to assess the weight and credibility of the evidence and to resolve any conflicts in the evidence." *Magee v. State*, 231 So. 3d 243, 250 (¶23) (Miss. Ct. App. 2017); *Whittle v. State*, 182 So. 3d 1285, 1289 (¶12) (Miss. Ct. App. 2015). "We will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Lafont*, 9 So. 3d at 1145 (¶6). That is not the

case here.

## B.    The "Breaking and Entering" and Intent Elements of the Burglary Conviction on the Patrick and Lingo Camp Houses

¶53.    Our review of the evidence also shows that ample evidence was presented to the jury supporting the "breaking and entering" and "intent" elements of Wilson's conviction on both the Patrick and Lingo camp houses.  As for Patrick's camp house, Patrick testified that when he arrived at his camp house on May 25, 2015, he saw that someone had entered his camp house without his permission and had gone through it "looking for stuff."  Also, as described above, Patrick authenticated the photographs from his trail camera that was pointed at the door of his camp house.  These photographs show someone entering and exiting his camp house.

¶54.    Wilson asserts that there was no evidence of the "intent" element on the burglary conviction on Patrick's camp house, but this assertion is without merit.  Patrick's testimony, and the photographs from his trail camera, are proof of an unlawful breaking and entering, and intent can be inferred by such circumstances.  *Gillum v. State*, 468 So. 2d 856, 860 (Miss. 1985) ("[W]e have frequently held that the existence of intent to steal may be presumed from proof of breaking and entering."); *see Brown v. State*, 799 So. 2d 870, 871-72 (¶¶7-9) (Miss. 2001) (The intent-to-steal element of a burglary charge was met where defendant was found hanging out of a broken window of an auto repair shop, though no items had been stolen.); *Crawford v. State*, 839 So. 2d 594, 595-96 (¶¶4-6) (Miss. Ct. App. 2003) (Although defendant had only rifled through a duffle bag in victim's home, and did not take anything of value, this Court held that evidence of defendant's breaking and entering was sufficient

27

to meet the State's burden of presenting evidence on each element of burglary.).

¶55. Regarding Lingo's camp house, the jury heard Lingo's testimony regarding the break-in at his camp and the items missing from his camp house. The jury also viewed the photographs of the damaged door to Lingo's camp house; the inside of Lingo's camp house showing where the missing items had been; and the bathroom trash can from Lingo's camp house containing the plastic cigar tip, which was linked to Wilson through the testimony of the State's DNA expert. Even Wilson does not assert that the jury's verdict as to the burglary of Lingo's camp house was against the overwhelming weight of the evidence.

¶56. Wilson's final contention consists of general assertions that the State used perjured testimony to prove its case, and that the trial judge was biased. There is no support in the record for these statements. "'We have on many occasions held that we must decide each case by the facts shown in the record, not assertions in the brief . . . .'" *Amerson v. Epps*, 63 So. 3d 1246, 1251 (¶12) (Miss. Ct. App. 2011) (quoting *Mason v. State*, 440 So. 2d 318, 319 (Miss. 1983)). We are not bound to consider or act upon these unsupported representations of fact. *King v. State*, 857 So. 2d 702, 718 (¶32) (Miss. 2003) ("A reviewing court does not act upon innuendo and unsupported representation of fact, or upon assertions in briefs, but is bound by the matters contained in the official record."); *Miller v. State*, 919 So. 2d 1137, 1143 (¶26) (Miss. Ct. App. 2005) (citation omitted). Rather, as we addressed above, it is the jury's role to assess the weight and credibility of the evidence, and we will not disturb a jury verdict unless allowing it to stand "would sanction an unconscionable injustice." *Lafont*, 9 So. 3d at 1145 (¶6). Taking the evidence that supports the jury's verdict as true, and

reviewing it in the light most favorable to the verdict, we find that allowing the verdict to stand would not sanction an "unconscionable injustice." *Id.* Accordingly, we find that the trial court did not abuse its discretion in denying Wilson's motion for a new trial. This issue is without merit.

## V. Sufficiency of the Evidence

¶57. Wilson asserts that the court erred when it denied his JNOV motion because there was insufficient evidence to support the jury's verdict on the burglary convictions for the Patrick and Lingo camp houses.[21] The denial of a JNOV motion is reviewed de novo "because [it is a] challenge [to] the legal sufficiency of the evidence." *Brooks v. State*, 203 So. 3d 1134, 1137 (¶11) (Miss. 2016). "In reviewing the sufficiency of the evidence, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Jackson v. State*, 247 So. 3d 335, 337 (¶6) (Miss. Ct. App. 2018) (internal quotation marks omitted). "This Court may only reverse a denial of a JNOV [motion] when, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." *Anderson v. State*, 154 So. 3d 42, 50 (¶20) (Miss. Ct. App. 2014).

¶58. Based on our review of the record, we find that the State presented sufficient evidence at trial for a competent jury to find that Wilson burglarized the Patrick camp house and the

---

[21] Wilson's counsel moved for a directed verdict at the close of the State's case, and renewed this motion at the close of evidence. These motions were denied as to the burglary convictions on both the Patrick and Lingo camp houses.

Lingo camp house. This evidence is outlined and described in the preceding section regarding the trial court's denial of Wilson's motion for a new trial, and we will not repeat it here. We now turn to address Wilson's contentions regarding this assignment of error.

¶59. Wilson asserts that there were no fingerprints or shoe prints to show that he committed the burglaries. The jury heard Investigator Thornton's testimony on cross-examination that he did not believe any fingerprints were taken from the crime scene, and the jury is presumed to have weighed this evidence in deciding the identification issue, along with all the other evidence before it. This is not grounds for reversing the denial of a JNOV motion, as it is "'the jury [that] determines the weight and credibility to give witness testimony and other evidence.'" *Jackson*, 247 So. 3d at 337 (¶7) (quoting *Gillett v. State*, 56 So. 3d 469, 505 (¶102) (Miss. 2010)).

¶60. Wilson also challenges Fortenberry's testimony, asserting that her testimony about purchasing the Vizio TV from him was "perjured" and that the State "forced [her] to testify to avoid prosecution [for] receiving stolen goods." We find no evidence in the record supporting these assertions, and we are not bound to consider them. *King*, 857 So. 2d at 718 (¶32); *Miller*, 919 So. 2d at 1143 (¶26). In any event, the jury heard all of Fortenberry's testimony on direct and cross-examination and is presumed to have considered it in full. *Jackson*, 247 So. 3d at 337 (¶7).

¶61. Next, Wilson repeats his assertion that the plastic cigar tip was "contaminated," and thus it could not support the convictions against him. We reject this contention for the same reasons we did so in the preceding section in which Wilson challenged the trial court's denial

30

of his new trial motion on this basis. We also observe that the jury heard Investigator Thornton's testimony on cross-examination that Lingo's camp house was not roped off from the time the original investigating officer was there on May 28, 2015, and when the plastic cigar tip was retrieved on June 3, 2015. The jury is presumed to have considered this testimony, in addition to all the other evidence and testimony outlined above on this issue, and to have weighed all this evidence before it found Wilson guilty on both the Patrick and Lingo burglary counts. *Id.*

¶62. Wilson does not challenge the sufficiency of the evidence as to the "breaking and entering" and "intent" elements of his burglary conviction on the Lingo camp house, other than to repeat his broad assertions that the State used perjured testimony and biased witnesses to prove its case. As we previously observed, there is no support in the record for these accusations, and we will not consider or act upon these unsupported representations of fact. *King*, 857 So. 2d at 718 (¶32); *Miller*, 919 So. 2d at 1143 (¶26); *see Mason*, 440 So. 2d at 319.

¶63. Wilson asserts that there was insufficient evidence to support his Patrick camp house burglary conviction because there were no photographs to corroborate Patrick's testimony that when he entered his camp house on May 28, 2015, "all the cabinet doors [were] open, [the] dresser drawers [were] open, [and] the closet drawers [were] open. I [could] tell somebody had been going through there looking for stuff." We find Wilson's contention without merit, as "a single witness's uncorroborated testimony is sufficient to support a conviction." *Jackson*, 247 So. 3d at 337 (¶7). As we addressed above, Patrick's testimony

31

supports both the "breaking and entering" and "intent" elements of the burglary conviction, *see Gillum*, 468 So. 2d at 859; *Crawford*, 839 So. 2d at 595-96 (¶¶4-6); *see also Brown*, 799 So. 2d at 871-72 (¶¶7-9); and Patrick's testimony was further corroborated by the photographs from Patrick's trail camera, showing a person entering and exiting his camp house.

¶64. The jury reviewed the evidence presented at trial in its entirety, and determined which facts were to be accepted or rejected. Viewing the evidence in the light most favorable to the prosecution, reasonable jurors could have found beyond a reasonable doubt that Wilson was the perpetrator. *Jackson*, 247 So. 3d at 337 (¶6). This assignment of error is without merit.

### VI.    Wilson's Due Process Rights

¶65. Wilson asserts that his lawyer, the prosecutor, and the circuit court judge conspired to deprive him of his rights to due process of law. One of Wilson's assertions is that his "speedy-trial claim blatantly shows [that] the trial court conspired to deprive and fraudulently take away defendant's rights." We find no merit in this contention for all the reasons that we stated in addressing Wilson's speedy-trial claim, above. Wilson also asserts that Patrick and Fortenberry gave perjured testimony, but our review of the record does not reveal any such "perjured" testimony, and, in any event, both witnesses were subject to cross-examination and the jury heard all their testimony. Wilson also asserts that "the State failed to disclose [a] deal struck between [the] prosecution and [the] sole witness [Fortenberry] linking [Wilson] to [the] crime." Our review of the record reflects that there is no proof that there

32

was an agreement between Fortenberry and the State, or any promise made by the State to induce Fortenberry to testify at trial. We again reiterate that we will not consider or act upon these unsupported representations of fact. *King*, 857 So. 2d at 718 (¶32); *Miller*, 919 So. 2d at 1143 (¶26); *see Mason*, 440 So. 2d at 319. For the reasons stated, we find no merit in this assignment of error.

### VII. The *Batson* Challenge

¶66. Wilson's final assignment of error appears to be a *Batson*[22] challenge based upon the assertions he makes that indicate he believes the State did not strike jurors for race-neutral reasons. Wilson's argument on this assignment of error, in full, is as follows:

> [The prosecution] used strikes on all African American prospect[ive] jurors. The only African American [the prosecutor] did not strike was Mr. Stuart. The only reason he was not struck was because he works in law enforcement. He currently works for the Mississippi State Senate.

We find this assignment of error without merit for the reasons addressed below.

¶67. As the Mississippi Supreme Court has explained, a *Batson* challenge should proceed as follows:

> First, the defendant must establish a prima facie case of discrimination in the selection of jury members. The prosecution then has the burden of stating a racially neutral reason for the challenged strike. If the State gives a racially neutral explanation, the defendant can rebut the explanation. Finally, the trial court must make a factual finding to determine if the prosecution engaged in purposeful discrimination. If the defendant fails to rebut, the trial judge must base his decision on the reasons given by the State.

*Berry v. State*, 802 So. 2d 1033, 1037 (¶11) (Miss. 2001) (citations omitted). The record in this case shows that defense counsel made no *Batson* challenge to any of the State's use of

---

[22] *Batson v. Kentucky*, 476 U.S. 79 (1986).

33

peremptory challenges:

> [THE COURT]: Everybody okay with the jury? Any challenges or objections to the jury?
>
> [DEFENSE COUNSEL]: No, Your Honor.
>
> [THE COURT]: Both sides agree we have an acceptable jury to try this case?
>
> [DEFENSE COUNSEL]: That's correct.

As the Mississippi Supreme Court explained in *Corrothers v. State*, 148 So. 3d 278, 305-06 (¶65) (Miss. 2014), a party is "procedurally barred from making a *Batson* challenge to a juror for the first time on appeal." Accordingly, we find that Wilson's *Batson* challenge is procedurally barred because it was never raised in the trial court.

¶68. We also reject Wilson's *Batson* challenge because our review of the record shows that there is no evidence of the racial composition of the venire panel; the race of any juror struck or accepted by the State or the defense; or the racial composition of the jury that actually tried Wilson.[23] "When a *Batson* challenge is appealed, it is the responsibility of the appellant to furnish the court with a record which is adequate to review the issues presented." *Watson v. State*, 991 So. 2d 662, 665 (¶7) (Miss. Ct. App. 2008) (internal quotation mark omitted). We simply cannot review this assignment of error because Wilson's *Batson* challenge is wholly unsubstantiated in the record and is therefore procedurally barred for this additional

---

[23] We observe that in his appellate briefing, Wilson conceded that one of the jurors that the State accepted, Mr. Stuart, was African American, but we cannot rely on mere assertions in the parties' briefs. *Hansen v. State*, 592 So. 2d 114, 127 (Miss. 1991).

reason.[24] Further, Wilson's four-sentence argument, set forth above, provides no basis whatsoever for this Court to examine Wilson's *Batson* challenge on the merits under a plain-error standard of review.

### VIII. Review of the Court Record to Discern any other Arguable Issue Warranting Appellate Review

¶69. "As part of the *Lindsey* procedure, this Court must determine, based on a review of the record and any pro se brief filed, whether any arguable issue exists." *Thomas*, 247 So. 3d at 1258 (¶16). After a thorough review of the record, including the indictment, all pretrial and post-trial motions and orders, the jury instructions, the trial transcript, and the trial exhibits, we find that no arguable issues exist warranting appellate review. Accordingly, for all reasons set forth above, we affirm Wilson's convictions and sentences.

¶70. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**

---

[24] In his reply brief, Wilson asserts that "Appellant cannot produce juror names and numbers, because the State failed to disclose [the] jury pool list. The lawyers assigned to Appellant's case are of no assistance in helping identify said jurors." We observe that even if the "juror names and numbers" had been made part of this record, that information would not indicate the racial makeup of the jury panel. *See* Miss. Code Ann. § 13-5-1 (Rev. 2012) (setting forth jury questionnaire information).